**PEOPLE OF the STATE OF ILLINOIS, et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

**No. 81–2146.**

United States Court of Appeals, Seventh Circuit.

Submitted July 24, 1981.

Decided Sept. 21, 1981.

Robert R. Harris, Washington, D. C., for petitioners.

Gordon P. MacDougall, Washington, D. C., Tyrone G. Fahner, Atty. Gen., Chicago, Ill., Edward J. O'Meara, I. C. C., John J. Powers, III, Dept. of Justice, Washington, D. C., Howard D. Koontz, ICG, RR. Co., Chicago, Ill., for respondents.

Before CUMMINGS, Chief Judge, and SPRECHER and CUDAHY, Circuit Judges.

PER CURIAM.

This case is before the court on a petition for review of an Interstate Commerce Commission ("ICC" or "Commission") decision of July 17, 1981 refusing to suspend or investigate a proposed surcharge of $395 per car on the rates charged by the Illinois Central Gulf Railroad Co. ("ICG") for all shipments on its line between Mason City and Covel, Illinois, inclusive.[1] One consequence of this decision was to permit the surcharge to become effective on Saturday, July 18, 1981 at 12:01 a. m. However, on Friday, July 17 we issued an *ex parte* order temporarily staying the effectiveness of the surcharge pending the responses of the ICC and ICG to the petitioners' emergency application for a stay. The following Friday, July 24, upon consideration of the stay application, a memorandum in support and the responses thereto, in an unpublished order, we vacated our previous order and denied a stay pending the disposition of the instant petition for review. This opinion is issued in connection with our unpublished order of July 24.

Under the 1980 Staggers Act, a railroad which is not earning adequate revenues on a low density branch line, upon proper application, may impose a surcharge to ensure a specified level of revenues.[2] A shipper may challenge such a surcharge by demonstrating that it will afford the railroad revenues exceeding the level specified by the statute. If such a demonstration is made, "the Commission may suspend the application of *only so much* of the surcharge as will produce revenues in excess of the amount so demonstrated." 49 U.S.C. § 10705a(b)(6) (emphasis supplied). The

Commission also may cancel a surcharge, but again, only insofar as it produces revenues exceeding the level specified by the statute. 49 U.S.C. § 10705a(b)(3)(A).

Our examination of a long line of Supreme Court precedents causes us to doubt the propriety of an injunction in the present context. In *Arrow Transp. Co. v. Southern R. Co.*, 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), several railroads published tariffs proposing to reduce their rates. The ICC exercised its statutory authority to suspend the tariffs for seven months. Under the statutory scheme then in effect, when the ICC did not issue an order within the seven-month period the tariffs became effective. Five months after the expiration of the seven-month period, when the ICC still had not issued an order regarding them, the railroads announced that they would implement the rate tariffs. The Supreme Court upheld the lower courts' denial of an injunction against the railroads' implementation of the new rates pending an ICC decision on the proposed tariffs on the grounds that Congress intended to vest exclusive suspension power in the ICC. 372 U.S. at 667, 83 S.Ct. at 988. The Court reached a similar result in *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), when the district court enjoined the ICC from permitting railroads to collect an emergency surcharge which the ICC had refused to suspend. "The rule of [*Arrow Transportation* and *SCRAP* ] is one barring courts from entering disruptive injunctions against collection of rates not finally declared lawful or unlawful by the ICC." *Aberdeen & Rockfish R. Co. v. SCRAP*, 422 U.S. 289, 317, 95 S.Ct. 2336, 2354, 45 L.Ed.2d 191 (1975). *See also Southern R. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979) (ICC

1. The surcharge was published pursuant to 49 U.S.C. § 10705a, which was part of the Staggers Rail Act of 1980, Pub.L.No. 96–448, 94 Stat. 1895.

2. A low density line is one which carried "less than 3,000,000 gross ton miles of traffic per mile in the most recent calendar year for which traffic is available[.]" 49 U.S.C. § 10705a(b)(2)(A). A carrier may impose a

surcharge on such a line if its revenues from it do not cover:

(A) 110 percent of such carrier's variable cost of transporting the traffic involved to or from such line; plus
(B) 100 percent of such carrier's reasonably expected costs of continuing to operate such line. . . .

49 U.S.C. § 10705a(b)(2).

decision not to investigate lawfulness of a seasonal rate increase not judicially reviewable); *Long Island R. Co. v. Aberdeen & Rockfish R. Co.*, 439 U.S. 1, 99 S.Ct. 46, 58 L.Ed.2d 1 (1978) (per curiam) (district court lacks authority to disturb interim rate increases authorized by Congress to cover increased taxes to fund employee retirement benefits); *Atchison, T. & S. F. R. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973).[3] Most recently, in a context pertinent to our consideration of the present stay application, the Court stated: "The authority to determine when any particular rate should be implemented is a matter which Congress has placed squarely in the hands of the Commission." *Consol. Rail Corp. v. Nat. Ass'n. of Recycling Ind.*, 449 U.S. 609, 611, 101 S.Ct. 775, 777, 66 L.Ed.2d 776 (1981) (per curiam). On the basis of these cases, at this time we are not convinced that the requested relief would be appropriate for this court to grant.[4]

**3.** In *Atchison*, a plurality of the Court stated that no provision in the relevant statutes deprived a court of the power to enjoin rates which the Commission had approved already in order to protect its jurisdiction, but cautioned that this power must be exercised carefully. 412 U.S. at 820, 93 S.Ct. at 2381. However, the plurality also noted that subsequent legislation might affect the propriety of injunctive relief. 412 U.S. at 823, 93 S.Ct. at 2383. In *Long Island R. Co.*, the Court found the Railroad Retirement Amendments of 1973 to be such "subsequent legislation" barring courts from providing equitable relief from rate increases. 439 U.S. at 7, 99 S.Ct. at 49. It appears that the 1980 Staggers Act also may be such "subsequent legislation" because of its purpose of providing railroads with needed capital to avoid further deterioration of the rail system or the necessity of federal subsidies. *See generally* H.Rep.No. 96–1035, at 34–45, *reproduced in* 1980 U.S.Code Cong. & Admin.News 3978, 3979–3990; H.Conf.Rep.No. 96–1430 at 79, *reproduced in* 1980 U.S.Code Cong. & Admin. News 4110.

**4.** The petitioners rely upon a recent instance in which the Eighth Circuit granted a stay of a surcharge after the ICC had refused to suspend it. *City of Cherokee v. ICC*, 81–1607 (8th Cir. June 22, 1981) (unpublished order). Without expressing any view on how we would dispose of a request for a stay in the circumstances present in that case, we note that they differ appreciably from those of this case. The petitioners in *Cherokee* contended that imposition of the surcharge constituted a *de facto* abandonment of the line. The court in February, 1981 had reversed the ICC's approval of the line's abandonment, *City of Cherokee v. I. C. C.*, 641 F.2d 1220 (8th Cir. 1981), and a certiorari petition from that judgment still was pending at the time the stay was granted. Thus, the stay may have been permissible under *Atchison*, note 3, *supra*, to protect the court's jurisdiction. In this case, the petitioners also contend that the surcharge is a *de facto* abandonment. However, ICG withdrew a previous application for a certificate of abandonment. Thus, neither the ICC nor this court have had an opportunity to consider the propriety of an abandonment of the line in question, and a stay is not needed to protect our jurisdiction in the instant proceedings.