**ABERDEEN AND ROCKFISH RAILROAD COMPANY, et al., Petitioner,**

v.

**The UNITED STATES of America and the Interstate Commerce Commission, Respondents.**

No. 81–4443.

United States Court of Appeals, Fifth Circuit.

Nov. 30, 1981.

Lawrence A. Miller, Washington, D.C., Charles E. Suffling, New Orleans, La., for petitioner.

Charles Gerkin, Carl E. Sanders, John R. Molm, Atlanta, Ga., for SE Assoc. of Regulatory Utility & Sou. Governors' Assn.

Alan M. Weiss, Washington, D.C., for Long Island RR.

George Carl Pezold, Huntington, N.Y., for Frt. Users.

Craig M. Keats, Atty., ICC, Washington, D.C., for respondents.

Olga Boikess, Washington, D.C., for Long Island.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

BY THE COURT:

The petitioners, various Southern and Western railroads ("Southern and Western Railroads" or "Railroads"), have asked this court to review decisions of the Interstate Commerce Commission ("ICC" or "Commission") declining to reject or suspend a surcharge tariff filed by the Long Island Rail Road Company ("LIRR" or "Long Island"). We granted an emergency stay in order to study whether we had jurisdiction to review the decisions of the ICC. We now conclude that the ICC's decisions declining to reject or suspend a surcharge tariff are nonfinal administrative decisions not subject to our review. We dissolve the emergency stay and dismiss the petition for review.

On September 12, 1981, the LIRR, invoking section 217(a)(1) of the Staggers Rail Act of 1980 ("Staggers Act"), 49 U.S.C. § 10705a,[1] filed a surcharge tariff to become

---

1. Section 217(a)(1) of the Staggers Act, 94 Stat. 1916, added a new § 10705a to the Interstate Commerce Act, 49 U.S.C. § 10705a. Section 10705a authorizes rail carriers to file and collect surcharges for transportation services they perform "without the concurrence of the other carriers that are party in such joint rate." *Id.* § 10705a(a)(1)(A). This has the effect of allowing carriers unilaterally to increase their divisions on joint rates/through routes—a practice formerly proscribed by the Act.

effective on October 27, 1981.[2] The tariff proposed a surcharge on all joint-line rail traffic of all commodities (except copper) of varying amounts per car depending upon the line-haul transportation charge in dollars and a surcharge of $102.00 per car on wrought pipe and pulpboard destined respectively for Bushwick and Nichols Siding, New York.

The Commission responded by ordering the LIRR to show cause why its pending surcharge proposal should not be rejected. The ICC questioned whether the proposal met the terms of the Staggers Act, which provides in part that

> [a] rail carrier may not apply a surcharge under this subsection unless, for the one-year period preceding the surcharge, such carrier has concurred in all rate increases of general applicability applicable to the joint rate to which such surcharge applies and agreed to by all other carriers that are party to such joint rate.

49 U.S.C. § 10705a(a)(4). The Commission was concerned that the LIRR was ineligible to participate in a Staggers Act rate increase because it had not participated in a general rate increase effective on October 1, 1973[3] and in another general rate increase effective on June 20, 1974.[4]

Thereafter, the Southern and Western Railroads replied in opposition to the LIRR's answer to the order to show cause and also filed with the ICC a protest and a petition for rejection or suspension of the Long Island's proposed surcharge. The Railroads argued in their reply that even though the two general rate increases had expired they remained part of the rate structure and that the LIRR was required to publish a master tariff naming these increases prior to participating in a Staggers Act surcharge. Protests and petitions were also filed by various shippers, groups of shippers, and interested parties.

On October 23, 1981, the Commission served its decision on the order to show cause ("decision of October 23, 1981").[5] In its decision, the ICC concurred in the Long Island Rail Road's interpretation of the Staggers Act. The Commission said that

> Congress intended that consideration be limited to those general increases approved by us and imposed within the one year period. . . .
>
> . . . .
>
> . . . If we were to consider flagouts to general increases prior to the one year period, we would frustrate the Stagger's Act intent to facilitate the ability of revenue-needy carriers to increase their revenues. The Staggers Act intended that improvement and financial stability of the rail system occur as quickly as possible. In effect, the Southern and Western Railroad's interpretation would require the Long Island to flag in to prior increases, which were filed 7 and 8 years ago, and then wait one year before it could impose a surcharge regardless of its current revenue need.

Ex parte No. 299 (Sub-No. 1), *Increases in Freight Rates and Charges of the Long Island Rail Road Company to Offset Retirement Tax Increases—1973* and Docket No. 36874, *Notice of Intent to File Divisions Complaint by the Long Island Rail Road Company*, at 4, 5 (Oct. 23, 1981). The ICC concluded that the LIRR's "surcharge tariff should not be rejected but should be considered on the merits." *Id.* at 6. In a decision served 3 days later, the day before the surcharges were to go into effect, the ICC acted upon the protests and petitions and declined to suspend or investigate the

---

**2.** Freight Tariff LI 9074.

**3.** Ex parte No. 299.

**4.** Ex parte No. 305.

**5.** Ex parte No. 299 (Sub-No. 1), *Increases in Freight Rates and Charges of the Long Island Rail Road Company to Offset Retirement Tax Increases—1973* and Docket No. 36874, *Notice of Intent to File Divisions Complaint by the*

proposed surcharge tariff ("decision of October 26, 1981").[6]

The Southern and Western Railroads, now joined by several intervenors,[7] then brought this proceeding to review the Commission's decisions and enjoin the surcharge from taking effect.

Our jurisdiction to review a decision of the Interstate Commerce Commission depends, in the first instance, on the "finality" of the Commission's decision. We recently have held that this court is without jurisdiction to review a decision of the ICC not to suspend or investigate a railroad's proposed Staggers Act surcharge. *See Mississippi Public Service Commission v. ICC*, 662 F.2d 314 (5th Cir. 1981). In *Mississippi Public Service Commission* we relied on an unbroken line of Supreme Court authority culminating in *Southern Railway Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979), that established that decisions of the ICC not to suspend or investigate are unreviewable because they do not constitute final decisions. We recognized that Congress had provided the *Mississippi Public Service Commission* petitioners with an avenue through which the lawfulness of a railroad's tariff may be determined, *see* 49 U.S.C. § 11701, and noted that

> [b]esides opening the door for judicial challenges of every Commission suspension decision relating to proposed surcharges, review [of decisions not to suspend or investigate] would allow [the] petitioners to circumvent the procedural

framework enacted by Congress for charges of unlawful actions under the Act.

*Mississippi Public Service Commission*, 662 F.2d at 318.

■ In view of our holding in *Mississippi Public Service Commission*, it is clear that the ICC's decision of October 26, 1981 declining to investigate or suspend the proposed tariff filed by the LIRR is unreviewable.[8] The Commission "voted not to suspend and not to investigate the proposal" and allowed the proposed surcharges to "become effective as scheduled on October 27, 1981." This is the precise decision that we said in *Mississippi Public Service Commission* was not reviewable by this court. Thus, we are without jurisdiction to review the Commission's decision of October 26, 1981.

■ Our decision in *Mississippi Public Service Commission* held only that a decision of the ICC not to investigate or suspend a Staggers Act surcharge was not reviewable. Nonetheless, because decisions not to investigate or suspend and decisions not to reject involve similar administrative considerations, we believe it follows that a decision of the ICC not to reject a proposed Staggers Act surcharge is also unreviewable. Both the decision not to suspend and the decision not to reject a proposed tariff filing are committed to the discretion of the Commission. *Compare* 49 U.S.C. § 10705a(b)(6) ("the Commission may suspend the application of . . . the surcharge") *with id.* § 10762(e) ("The Commission may reject a tariff submitted to it . . . ."). *See*

---

*Long Island Rail Road Company* (Oct. 23, 1981).

**6.** Suspension Case No. 70601, *Surcharge on All Freight Long Island Rail Road, October 1981* (Oct. 26, 1981).

**7.** Freight Users Association of Long Island, Inc., the Southern Governor's Association, and the Southeastern Association of Regulatory Utility Commissioners have intervened asking us to review the Commission's decisions and to enjoin the proposed surcharge from taking effect. The Long Island Rail Road has intervened asking us to dismiss the petition for review and dissolve the emergency stay.

**8.** We, of course, recognize that the Southern and Western Railroads have conceded at the outset that this court is without jurisdiction to review the Commission's decision of October 26, 1981 declining to suspend the LIRR's surcharge tariff. Nonetheless, because it is unclear whether all of the intervenors seeking to review the ICC's decisions and enjoin the surcharge join in the concession, we have reemphasized our holding in *Mississippi Public Service Commission* that a decision of the Commission not to investigate or suspend a Staggers Act surcharge is unreviewable.

*also Southern Railway,* 442 U.S. at 455, 99 S.Ct. at 2394–95 (a statutory provision authorizing the Commission to investigate a tariff, which provided that "the Commission may ... order a hearing concerning the lawfulness of a rate," was "written in the language of permission and discretion," and, as a result, a decision not to investigate was unreviewable because "there [was] simply 'no law to apply' in determining if the [Commission's] decision is correct."). Both decisions are interlocutory and may be followed by a complaint requesting the Commission to review the lawfulness of the tariff. *See* 49 U.S.C. § 11701.[9] "[A]ny shipper may require the Commission to investigate the lawfulness of any rate at any time—and may secure judicial review of any decision not to do so—by filing a [section 11701] complaint." *Southern Railway,* 442 U.S. at 454, 99 S.Ct. at 2394, *quoted in Mississippi Public Service Commission,* 662 F.2d at 318. As explained by the District of Columbia Circuit in a proceeding in which it was asked to review a decision of the Federal Energy Regulatory Commission to accept—i.e., not to reject—a rate filing,

> [f]rom ... *Southern Railway* it follows *a fortiori* that the order presented for review in this case is nonreviewable. The decision whether to reject or to accept a rate filing is based on precisely the same information, and primarily the same considerations, that govern decisions to suspend or not to suspend, to investigate or not to investigate. The decision to accept a rate filing is a necessary adjunct to the unreviewable decision to suspend and investigate. It would make little sense to declare orders concerning suspension and investigation unreviewable if the courts may review the related order to accept a rate filing. A holding that we could assume jurisdiction in this case would, in effect, avoid the strictures of ... *Southern Railway* on the nicest of distinctions.

*Papago Tribal Utility Authority v. FERC,* 628 F.2d 235, 243 (D.C. Cir. 1980). *See also Aeronautical Radio, Inc. v. FCC,* 642 F.2d 1221, 1234 (D.C. Cir. 1980), *cert. denied,* 451 U.S. 976, 101 S.Ct. 2059, 68 L.Ed.2d 357 (1981).

Considering the rationale underlying our decision in *Mississippi Public Service Commission,* we hold that the ICC's decision of October 23, 1981 is also unreviewable. Not only did the Commission decline in its decision to reject the LIRR's proposed Staggers Act surcharge, but it also reserved further action until "consider[ation] on the merits." There has been no final decision by the Commission. The petitioners eventually may obtain judicial review of the lawfulness of the LIRR's proposed Staggers Act surcharge through a section 11701 proceeding, but they may not do so now.[10]

Nor do we find apposite the decision of the United States Court of Appeals for the District of Columbia Circuit in *Associated Press v. FCC,* 448 F.2d 1095 (D.C. Cir. 1971). In *Associated Press,* the court of appeals recognized a limited exception to the requirement of finality by permitting review of an agency decision not to reject a proposed tariff when the agency was under a duty to reject. *Id.* at 1103.

In this court, the petitioners have seized upon *Associated Press* and have advanced on several fronts with the single objective of demonstrating to us that the Commission was under a duty to reject the Long Island's proposed Staggers Act surcharge. They contend that the Commission was under a duty to reject the Long Island's proposed surcharge tariff because it did not comply with the express statutory prerequisites of the Staggers Act and resulted in a unilateral change in the divisions of joint rates in violation of the Interstate Commerce Act. *See* 49 U.S.C. § 10705(a).

---

**9.** After a surcharge has become effective, any person may file with the Commission a complaint pursuant to 49 U.S.C. § 11701 claiming that the surcharge violates either the Staggers Act or any other provision of the Interstate Commerce Act. The Commission then would be required to investigate the lawfulness of the tariff. A decision of the ICC considering a § 11701 complaint is subject to judicial review.

**10.** *See* note 9 *supra.*

The petitioners argue that the LIRR's proposed tariff violates the Staggers Act because it is not limited to particular routes or to a particular movement between two points. They repeat their earlier objection raised before the Commission that the LIRR has not qualified to file under the Staggers Act because it has not concurred in several earlier general rate increases. They then argue that absent a filing under the Staggers Act, the Long Island's surcharge is an illegal division of a joint rate.

The arguments advanced by the petitioners cannot be said, however, to place on the Commission a duty to reject a proposed Staggers Act surcharge. Although the Commission did preliminarily consider whether the LIRR was precluded from obtaining relief under the Staggers Act by not joining in two previous general rate increases, it did not, and indeed could not, have considered fully the complex arguments presented by the petitioners within the 45-day period prior to the effective date of the surcharge. The sophisticated nature of the presentations on unsettled issues of law, coupled with the severe time constraints, militate against saying that the Commission was under a duty to reject the proposed tariff.

> There [was] no time for a considered judgment concerning facts or law.... [There was] no factual record that a reviewing court might examine, and ... little legal analysis by the Commission that the court might evaluate. The refusal to reject a rate filing is analogous to the denial of a motion to dismiss under the rules of civil procedure and should be treated the same way for the purposes of appeal or review.

*Papago Tribal Utility Authority*, 628 F.2d at 240 (citations omitted).

We also recognize that the exception to the requirement of finality recognized in *Associate Press* and urged by the petitioners has been seriously undermined by the Supreme Court's decision in *Southern Railway*, "which reemphasized the importance of the nonreviewability doctrine in the context of nonfinal administrative orders."

*Papago Tribal Utility Authority*, 628 F.2d at 246. Moreover, for us now to hold that the Commission's decision declining to reject a proposed Staggers Act surcharge tariff is reviewable would enable parties to avoid our decision in *Mississippi Public Service Commission*—and the Supreme Court's holding in *Southern Railway*—simply by filing petitions to reject, rather than suspend, and by alleging that the Commission violated some duty. This we decline to do.

The decisions that the petitioners ask us to review in this proceeding are nonfinal decisions of an administrative agency and not subject to our review. The emergency stay entered by this court is DISSOLVED. The petition for review of orders of the Interstate Commerce Commission is DISMISSED.