707 F.2d 984
 MINNEAPOLIS, NORTHFIELD AND SOUTHERN RAILWAY, INC., Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents.
and
Chicago and North Western Transportation Company,
Intervenor/Respondent.
 No. 82-1317.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 10, 1982.
Decided May 16, 1983.
Rehearing and Rehearing En Banc Denied June 14, 1983.
 
 William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Kenneth P. Kolson, Dept. of Justice, John Broadley, General Counsel, Kathleen M. Dollar, Associate General Counsel, H. Glenn Scammel, I.C.C., Washington, D.C., for I.C.C. and United States.
 Louis T. Duerinck, Stuart F. Gassner, Anne E. Keating, Chicago, Ill., for intervenor/respondent, Chicago and North Western Transp. Co.
 Faegre & Benson, Gordon G. Busdicker, Gordon B. Conn, Jr., Minneapolis, Minn., for petitioner.
 Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and DUMBAULD,* Senior District Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 A provision of the Revised Interstate Commerce Act, added by the Staggers Rail Act of 1980, permits a rail carrier to cancel the application of certain joint rates,[1] in the absence of a statutorily prescribed demonstration by another participating carrier, "notwithstanding any other provision of this title, any prior agreement in effect on the effective date of the [statute], or any requirement of the Commission." 49 U.S.C. Sec. 10705a(c)(1). Pursuant to this provision, intervenor Chicago and North Western Transportation Company (CNW) filed supplemental tariffs canceling specified joint rates with petitioner Minneapolis, Northfield and Southern Railway, Inc. (MNS). Respondent Interstate Commerce Commission (ICC) declined to investigate the tariffs, and the cancellations became effective as scheduled. On this appeal, MNS challenges the agency's refusal to investigate. We affirm the decision of the Commission.
 
 
 2
 * The tariffs which form the basis of this dispute were filed with the Commission in October of 1981. Acting pursuant to section 10705a(c)(1), CNW sought through these supplemental filings to eliminate its participation in existing joint rates applicable to shipments of lumber routed via MNS and CNW from Minneapolis through Chicago, Kansas City and East St. Louis to points beyond. The cancellations were scheduled to become effective December 12, 1981.
 
 
 3
 MNS filed a protest with the ICC challenging the supplemental tariffs in late November, 1981. In essence, the railroad urged that the proposed cancellations were anticompetitive and violative of a prior stipulation between MNS and CNW approved by the ICC in 1968. It further argued that to the extent section 10705a(c) permitted CNW to unilaterally cancel the joint rates in question, that provision amounted to an unconstitutional impairment of contractual obligations, in violation of the due process and contracts clauses of the Constitution. MNS requested that the Commission either rescind the attempted cancellations or suspend them and conduct an investigation as required under 49 U.S.C. Sec. 10705a(i).
 
 
 4
 After extending the effective date of the cancellations to January 12, 1982, CNW filed a response to the protest. On January 7, one day after CNW's response was filed, the Suspension Board of the ICC voted neither to suspend nor to investigate the cancellations. Division 1 of the Commission, acting as an appellate division, denied MNS's administrative appeal on January 11; the proposed cancellations became effective the following day and have remained in effect since that time. MNS then initiated this appeal.
 
 II
 
 5
 The threshold question we must address concerns the reviewability of the Commission's decision not to investigate the challenged cancellations under section 10705a(i)(1). Focusing upon numerous prior decisions finding ICC suspension actions nonreviewable, both the agency and CNW initially suggest that the Commission's refusal to investigate the supplemental tariffs in this case is outside our power to review.
 
 
 6
 It is now settled that ICC decisions relating to the suspension or investigation of tariffs under section 10707, being nonfinal orders committed to agency discretion, are not reviewable by the courts of appeals. See, e.g., Southern Railway v. Seaboard Allied Mining Corp., 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); Aberdeen & Rockfish Railroad v. Students Challenging Regulatory Agency Procedures, 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975); Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963); Midwest Packers Traffic Association v. ICC, 579 F.2d 473, 474 (8th Cir.1978). Utilizing this reasoning in the context of the Staggers Act, Commission decisions not to suspend a surcharge or reject a proposed tariff filing have also been held nonreviewable. Aberdeen & Rockfish Railroad Co. v. United States, 664 F.2d 41, 43-45 (5th Cir.1981) (decision not to reject proposed tariff filing pursuant to section 10762(e)); Mississippi Public Service Commission v. ICC, 662 F.2d 314, 316-19 (5th Cir.1981) (decision not to suspend surcharge pursuant to either section 10705a(b)(3)(A) or 10705a(b)(6)). The question whether a decision against investigation under section 10705a(i)(1) may be reviewed, however, apparently has not been directly answered.[2]
 
 
 7
 * Judicial review of a Commission decision not to investigate a cancellation under section 10705a(i)(1) may be precluded if the applicable statute, taken as a whole and in light of its legislative history, evidences an intent that judicial review be eliminated. See Seaboard Allied, 442 U.S. at 454-62, 99 S.Ct. at 2394-2398; see generally 5 B. Mezines, J. Stein & J. Gruff, Administrative Law ch. 44 (1983). We, of course, look to the statutory scheme and we are guided by certain general principles. "Judicial review of final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Morris v. Gressette, 432 U.S. 491, 501, 97 S.Ct. 2411, 2418, 53 L.Ed.2d 506 (1977) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967)). "[T]he ultimate analysis is always one of Congress' intent," Seaboard Allied, 442 U.S. at 454, 99 S.Ct. at 2394, and "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." Abbott Laboratories, 387 U.S. at 141, 87 S.Ct. at 1511. Applying these principles in the present case, we are convinced Congress did not intend to prohibit judicial review of a Commission refusal to investigate a cancellation under section 10705a(i)(1).
 
 
 8
 The Commission's investigatory power under section 10705a(i)(1) is cast in mandatory terms. The provision states that
 
 
 9
 [w]henever a class III rail carrier, in a protest filed with the Commission, makes a prima facie showing that ... the cancellation of the application of a joint rate under subsection (c) of this section will have an adverse effect on competition, the Commission shall investigate such protest.
 
 
 10
 (Emphasis supplied.) In contrast, Commission suspension and investigation decisions which have been found nonreviewable have as their statutory source provisions "written in the language of permission and discretion." Seaboard Allied, 442 U.S. at 455, 99 S.Ct. at 2394 (Commission authorization to investigate alleged illegality of rates, which provided that "the Commission may, upon the complaint of an interested party or on its own initiative, order a hearing concerning the lawfulness of [a] rate [which] hearing may be conducted without answer or other formal pleading ...." (emphasis supplied)); Aberdeen & Rockfish Railroad Co., 664 F.2d at 43 (statutory authorization for Commission rejection of tariff, which provided that the "Commission may reject a tariff submitted to it" (emphasis supplied)); cf. Southern Railway Co. v. ICC, 681 F.2d 29, 33 (D.C.Cir.1982) (suggesting that by using mandatory language in the Staggers Act, in contrast to the permissive language found in section 10707, Congress may have created judicially reviewable duties in the ICC) (dictum).
 
 
 11
 Moreover, in mandating that an investigation "shall" be undertaken "[w]henever a class III rail carrier ... makes a prima facie showing that ... the cancellation ... will have an adverse effect on competition," Congress has provided a guideline for both the Commission in determining whether an investigation must be made and the courts in reviewing that determination. The presence of this statutory standard also supports the conclusion that judicial review is available. Cf. Seaboard Allied, 442 U.S. at 455-56, 99 S.Ct. at 2394-2395 (absence of factors to guide agency's decision, and the court's review of that decision, militates against availability of judicial review).
 
 
 12
 That Congress contemplated judicial review of Commission decisions not to investigate under section 10705a(i)(1) is further indicated by the structure of the Act. As the Supreme Court has observed, "Congress did not use permissive language ... when it wished to create reviewable duties under the Act. Instead, it used mandatory language, and it typically included standards to guide both the Commission in exercising its authority and the courts in reviewing that exercise." Seaboard Allied, 442 U.S. at 456, 99 S.Ct. at 2395. The use of mandatory language with respect to Commission investigations pursuant to section 10705a(i)(1) and the inclusion therein of a standard for Commission action, when viewed in light of the entire statute, serves as strong evidence that judicial review of the agency's refusal to investigate was not to be precluded.
 
 
 13
 The nature of the remedy provided by section 10705a(i)(1) also weighs in favor of judicial review. This enactment reflects congressional concern that the surcharge and cancellation provisions of section 10705a not be used by larger carriers to the detriment of small railroads, see 126 Cong.Rec. H8553 (daily ed. Sept. 9, 1980) (statement of Rep. Lee), and through it Congress intended to
 
 
 14
 grant class III carriers ... a special remedy for actions under [the compensatory joint rate relief section] which would have an adverse effect on competition. The Committee seeks through this subsection to avoid the need and burden of complex litigation that might arise out of the need for class III carriers to resort to the antitrust laws, although an available alternative, if they feel a carrier is engaging in anticompetitive activities.
 
 
 15
 H.R.Rep. No. 1035, 96th Cong., 2d Sess. 64, reprinted in 1980 U.S.Code Cong. & Ad.News 3978, 4009; see also 126 Cong.Rec. H8553 (daily ed. Sept. 9, 1980) (statement of Rep. Lee).
 
 
 16
 The legislative history makes evident Congress's intent that section 10705a(i)(1) serve as a special and expeditious remedy for class III carriers, distinct from otherwise generally available administrative challenges to joint rate cancellations under the Act. This background reflects no congressional design to preclude judicial review of a Commission decision not to investigate under this provision. Indeed, the nature of section 10705a(i)(1) as a special remedy for class III carriers compels the opposite conclusion. "The right of judicial review is ordinarily inferred where congressional intent to protect the interests of the class of which plaintiff is a member can be found; in such cases, unless members of the protected class may have judicial review the statutory objectives might not be realized." Barlow v. Collins, 397 U.S. 159, 167, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970). To conclude that a class III carrier may not obtain judicial review of the agency decision involved in the present case--the Commission's refusal to investigate a cancellation's alleged adverse effect on competition--would effectively commit that decision to the agency's discretion by leaving the Commission with the unreviewable power to determine whether the special protections of section 10705a(i)(1) will be triggered. Such an interpretation would be inconsistent with the mandatory language of this provision and the inclusion of a standard to guide the Commission's determination, and would tend to frustrate Congress's purpose in its enactment.[3]
 
 
 17
 In short, we are satisfied that Congress did not intend to preclude judicial review of the Commission's refusal to investigate an alleged anticompetitive cancellation pursuant to section 10705a(i)(1). To the contrary, the language, the statutory structure and the special nature of the remedy afforded indicate that review should be available to determine whether the Commission correctly decided that no "prima facie showing" of an "adverse effect on competition" had been made and that investigation was therefore not required.
 
 B
 
 18
 In a closely related argument, both the ICC and CNW contend judicial review is unavailable because the order in question is not "final."[4] We disagree. "[T]he relevant considerations in determining finality are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action." Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970). Viewed in light of these considerations, we believe the Commission's refusal to investigate the alleged anticompetitive effects of the challenged cancellations is "final" for purposes of judicial review.
 
 
 19
 We note that the ICC decision in this case, although not a resolution of the merits of the challenged cancellations' propriety, is not a decision committed to agency discretion. Rather, as indicated previously, investigation is mandated where the protesting carrier has made a prima facie showing that the cancellations will have an adverse effect on competition. The mandatory nature of the Commission's duty here is readily distinguishable from the discretionary suspension and investigation decisions held to be nonreviewable on prior occasions, and evidences Congress's intent that judicial review of the agency's decision be available. Of greater significance is the fact that the question raised in this situation for purposes of judicial review--whether the refusal to investigate was proper because no prima facie showing of an adverse effect on competition was made--can be answered by a reviewing court without independently appraising the ultimate propriety of the challenged cancellations, a decision to be made initially by the Commission. Cf. Seaboard Allied, 442 U.S. at 458-59, n. 11, 99 S.Ct. at 2396-2397, n. 11. For these reasons, judicial review at this juncture "will not disrupt the orderly process of adjudication," a consideration weighing in favor of the conclusion that the agency action is "final" for purposes of review.
 
 
 20
 Further, the Commission's refusal to investigate effectively terminates the protesting class III carrier's ability to invoke the special remedy afforded by Congress under section 10705a(i)(1); the agency's decision against investigation is the final word with respect to this provision. Nor is this decision merely preliminary to other potential remedies available under the Interstate Commerce Act. Although MNS could conceivably utilize other statutory provisions in attempting to modify the supplemental tariffs or compel the Commission to ascertain their lawfulness, see, e.g., 49 U.S.C. Secs. 10705a(c), 11701, none of these alternatives would, if successful, result in the exact relief available under section 10705a(i)(1). Thus, in this sense, it is apparent that "legal consequences" flow from the Commission's action.
 
 
 21
 In short, we are persuaded that the agency action in this case is final for purposes of judicial review. We therefore proceed to the merits of this appeal: whether the Commission correctly refused to investigate the challenged cancellations pursuant to section 10705a(i)(1).
 
 III
 
 22
 As indicated, section 10705a(i)(1) provides that the Commission "shall investigate" whenever the protesting class III carrier "makes a prima facie showing that ... the cancellation ... will have an adverse effect on competition." Consequently, in reviewing a refusal to investigate pursuant to this provision, our inquiry is limited to whether the agency was correct in concluding that the requisite showing had not been made. In the present case, we agree that the required demonstration was not sufficiently established.
 
 
 23
 Briefly, although the verified statements accompanying MNS's protest allege that the cancellations would result in the loss of certain lumber traffic to MNS, there is no indication such action would adversely affect competition for this traffic with respect to other carriers. Any cancellation of joint rates may have some effect on traffic or revenues of a given line at a given time, but we are convinced Congress intended that a class III carrier demonstrate more than this in order to make a prima facie showing that competition would be adversely affected. In this regard, we also observe that neither CNW nor MNS, as an "overhead" carrier, has control over the actual routing of this lumber traffic, and neither carrier either originates or terminates this traffic on its lines. Moreover, MNS concedes that it has available some alternative routing. We therefore cannot say in this case that the presentation made by MNS is sufficient to constitute a prima facie showing that competition would be adversely affected by the challenged cancellations.[5]
 
 IV
 
 24
 In sum, we conclude that the Commission's refusal to investigate pursuant to section 10705a(i)(1) is reviewable agency action. We agree, however, that MNS has not sufficiently demonstrated that the cancellations challenged here will have an adverse effect on competition, so as to require the implementation of such an investigation. Accordingly, we affirm the Commission's decision.
 
 
 
 *
 The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 A joint rate is a rate charged by two or more carriers together to transport a single shipment over a given route, with each of the participating carriers transporting the shipment part of the way. The carriers agree upon the division of the revenues derived prior to setting the joint rate
 
 
 [2]
 But cf. New York Dock Railway v. United States, 696 F.2d 32, 34 (2d Cir.1982) (per curiam) (discontinuation of investigation of previously effective cancellation challenged under, inter alia, section 10705a(i) nonreviewable where discontinuation resulted from tie vote among members of ICC Suspension Board)
 
 
 [3]
 Moreover, given these factors, this case does not present a situation where judicial review would constitute unwarranted interference in an area committed to agency discretion or frustrate statutorily defined procedures. Compare Seaboard Allied, 442 U.S. at 456, 460, 99 S.Ct. at 2395, 2397
 
 
 [4]
 Under 28 U.S.C. Sec. 2342(5), the courts of appeals are granted jurisdiction to review all final rules, regulations and orders of the ICC
 
 
 [5]
 We are also unpersuaded by MNS's claim that section 10705a(c), by authorizing the unilateral cancellations in this case, substantially impaired a prior contractual relationship between the parties in violation of the due process clause of the fifth amendment. See Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 843, 78 L.Ed. 1434 (1934). This contention is based upon a 1965 joint rate stipulation agreed to by CNW and MNS and approved by the Commission in 1968. A fair reading of this stipulation, however, indicates that the parties were aware of possible future regulatory action with respect to the joint rate arrangement. Such regulatory alterations could have been initiated by the Commission itself or by one of the railroads. Given these circumstances, we are unwilling to conclude that the statutory authorization for the cancellations in question here substantially impaired a prior contractual relationship between CNW and MNS with respect to joint rates. MNS's contention in this regard is without merit