ILLINOIS COMMERCE COMMISSION, et al., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

Illinois Central Gulf Railroad Company, Intervenor.

No. 85–1101.

United States Court of Appeals, District of Columbia Circuit.

Argued March 25, 1986.

Decided May 6, 1986.

Gordon P. MacDougall, Washington, D.C. and James E. Weging, with whom Hercules F. Bolos, Chicago, Ill., was on brief, for petitioners.

Louis Mackall, Atty., I.C.C., with whom Charles F. Rule, Acting Asst. Atty. Gen., Robert S. Burk, Gen. Counsel, Ellen D. Hanson, Associate Gen. Counsel, I.C.C., and Catherine G. O'Sullivan, Atty., Dept. of Justice, Washington, D.C., were on brief, for respondents.

Howard D. Koontz, Chicago, Ill., for intervenor, Illinois Cent. Gulf R. Co.

Before WALD, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court PER CURIAM.

PER CURIAM.

Under the Staggers Rail Act of 1980 ("the Act"), a railroad may apply for a surcharge on certain rail traffic if previously applicable charges do not generate sufficient revenues to cover 110% of the railroad's variable cost of transportation to or from a line ("off-branch costs"), plus 100% of the carrier's reasonably expected costs of continuing to operate that line ("on-branch costs"). 49 U.S.C. § 10705a(b)(2) (1982). On December 26, 1984, the Illinois Central Gulf Railroad Company ("ICG") filed an application for two surcharges on a line between Clinton and Champaign.[1] The Illinois Commerce Commission ("Illinois") requested cost information from ICG justifying the surcharges, but ICG refused to comply with this request. ICG argues that Illinois was not entitled to this information because it had no standing to challenge the surcharges. Illinois contends that it is entitled to this information because it made its request on behalf of shippers who *do* have standing. Ultimately, the Interstate Commerce Commission ("ICC") refused to investigate or suspend the surcharges. This petition for review followed. We hold that ICG's refusal to comply with Illinois' request for cost information was unlawful. Because ICG's refusal resulted in the denial of the shippers' right to file an informed petition for suspension and investigation, we remand the petition to the ICC.

I.

Although the Act entitles a shipper to seek the suspension of proposed surcharges, the shipper's burden is not a light one. The shipper seeking the suspension of a surcharge must discharge two difficult responsibilities. First, the shipper must demonstrate

> that, after application of the surcharge, the surcharging carrier's revenues from all traffic originating or terminating upon the line to which the surcharge applies exceed 110 percent of such carrier's variable cost of transporting all traffic to or from such line plus such carrier's reasonably expected costs of continuing to operate such line.

49 U.S.C. § 10705a(b)(3)(A) (1982). Second, the shipper must establish to the satisfaction of the Commission that

> (A) it is substantially likely that [the shipper] will prevail on the merits;
>
> (B) without suspension, the proposed rate change will cause substantial injury to [the shipper]; and
>
> (C) because of the peculiar economic circumstances of [the shipper], [a future refund will] not protect [the shipper].

1. A 4.0-mile segment of this line was abandoned pursuant to the class exemption provisions of *Exemption of Out of Service Rail Lines,* 366 I.C.C. 885 (1983). The surcharges at issue in this case were imposed on the two remaining "wings" of the line. In the recent decision in *Illinois Commerce Comm'n v. ICC,* 787 F.2d 616 (D.C.Cir.1986), this court invalidated the class exemption provision and remanded the matter to the ICC for further consideration. On remand in this case, the ICC may wish to consider whether the surcharge should be reevaluated in light of the court's judgment in 787 F.2d 616.

49 U.S.C. § 10707(c)(1) (1982) (incorporated by reference in 49 U.S.C. § 10705a(b)(6)).

Without doubt, these burdens can be satisfied only by a shipper familiar with the data used to justify the surcharge. The Act assumes that a petitioner will be informed about the railroad's costs of operating the affected line and the revenue attributable to that line. Thus, without access to this information, the shipper's right to petition for a suspension becomes meaningless. Because the railroad is the principal source of this information, it is essential to the statutory process that shippers have the right to obtain the needed information from the railroad. The assumption that the petition filed by the shipper will be an informed one is central to the Act and this, of necessity, requires that a railroad comply with a shipper's request for cost and revenue information. Given the importance of an informed shipper, a railroad's refusal to comply with a shipper's request for information is, without question, unlawful.

## II.

The ICC and ICG both concede that shippers are entitled to receive the information necessary to petition the ICC for a suspension and investigation of surcharges. They argue, however, that because Illinois is not a shipper—and thus, they contend, lacks standing to challenge the surcharges[2]—ICG need not comply with its request for information. The difficulty with this argument is that Illinois sought cost information from ICG on behalf of two shippers who *do* have standing—Monticello Grain Company and Weldon Cooperative Grain Company—and in its request for information, Illinois explicitly informed ICG that these shippers authorized the request. ICG gives no reason why it could legitimately district Illinois' representation that it was authorized to make the request. Indeed, ICG rejected Illinois' request without even making an effort to verify that Illinois was acting on behalf of the shippers.

Thus, the railroad *seems* to argue that Illinois is not entitled to the information even if Illinois is acting on behalf of the shippers. We disagree. Although Illinois may itself lack standing to challenge the surcharges—an issue we need not resolve—it unquestionably may seek information for shippers (with standing) who authorize Illinois to act at their behest. Shippers are entitled to seek assistance from anyone—including Illinois—in preparing a response to a surcharge application. Often shippers and their counsel are unfamiliar with both ICC practice and transportation economics. Illinois, on the other hand, has been involved in myriad proceedings before the ICC on surcharges and other transportation regulatory issues. Therefore, it was not unreasonable for Illinois to offer its expertise to shippers and their counsel. ICG is no more entitled to refuse a request for information made by Illinois on behalf of shippers than it is entitled to deny requests by others—such as retained counsel and experts—who represent the shippers.

It has not been shown that Illinois lacked capacity under state law to represent the shippers; nor has it been shown that Illinois lacked the specific authorization of the shippers in this case. Therefore, on this record, it must be found that Illinois was fully authorized to seek information *on behalf of* the shippers and that ICG's refusal to give cost data to the Illinois Commerce Commission was impermissible.

## III.

ICG's refusal frustrated the statutory process by making it impossible for the shippers to challenge adequately the surcharges at issue in this case. We therefore remand this case to the ICC, which shall order ICG to comply with any discovery request made by Illinois as a representative of the shippers. The ICC must then consid-

---

**2.** The ICC and ICG maintain that only shippers have standing to challenge surcharge requests. In *Reasonably Expected Costs,* Ex Parte No. 402 (Sept. 24, 1984), the ICC held that Illinois had no standing to challenge a surcharge. We neither endorse nor disapprove that holding; because we decide that, in this case, *the shippers authorized Illinois to seek the information on their behalf,* we need not decide whether Illinois had standing on its own behalf.

er any new petition filed by these shippers for suspension and investigation of the surcharge.

We must emphasize, however, that our review in this case is limited *only* to ensuring that the shippers have an opportunity to file an informed petition for suspension and investigation. We agree with the other circuits that have held uniformly that once the ICC declines to suspend a surcharge, judicial review of the merits of this decision is not available. Instead, the shippers must file a complaint with the ICC and judicial review is available only after the ICC has acted on this complaint. *See Aber-* *deen & Rockfish Railroad Co. v. United States,* 664 F.2d 41, 43 (5th Cir.1981); *Mississippi Public Service Commission v. ICC,* 662 F.2d 314, 319 (5th Cir.1981); *People of the State of Illinois v. ICC,* 660 F.2d 289, 290–91 (7th Cir.1981).[3]

*So ordered.*

---

**3.** In *City of Cherokee v. ICC,* 671 F.2d 1080 (8th Cir.), *cert. denied,* 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982), the Eighth Circuit cited its power to protect its jurisdiction in a related abandonment case as justification for reviewing an ICC refusal to investigate a surcharge. However, in the instant case there is no need to protect this court's jurisdiction in any related case, so *City of Cherokee* is simply inapposite. Therefore, we need not decide whether this circuit should accept the *City of Cherokee* holding. In any event, the Eighth Circuit limited its review to whether the shippers had been given an opportunity to demonstrate that the surcharge was excessive, and the court did not review the *merits* of the ICC decision not to investigate.