# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 14, 2012          Decided March 27, 2012

No. 10-1381

OCCIDENTAL PERMIAN LTD., ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

PSEG ENERGY RESOURCES & TRADE LLC, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Earle H. O'Donnell* argued the cause for petitioners. With him on the briefs were *Jane E. Rueger* and *Jennifer L. Mersing*.

*Jennifer S. Amerkhail*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was *Robert H. Solomon*, Solicitor.

*David B. Raskin* was on the brief for intervenor Tres Amigas LLC in support of respondent.

Before: HENDERSON, ROGERS, and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Occidental Permian ("Occidental") and a number of its subsidiaries petition for review of final orders of the Federal Energy Regulatory Commission ("FERC") granting negotiated rate authority to Tres Amigas, a proposed energy transmission project. Occidental argues Tres Amigas does not satisfy the criteria FERC has set out as preconditions for such authority. Because we conclude Occidental lacks standing to challenge these orders, we do not reach this question and instead dismiss the petition.

I

Tres Amigas is a multi-billion dollar energy transmission project being developed in New Mexico. Its goal is to tie together all three of the independent electrical grids in the United States. As these grids currently operate, power cannot automatically flow between them but instead must be converted at each interchange. Tres Amigas says its facility will address this problem and remove structural barriers to the movement of power across the country by providing a three-way transmission "superstation" with a transfer capability greater than all the existing interconnections combined. New technological developments will also permit Tres Amigas to move power across the grids at shorter notice and lower cost while at the same time integrating renewable sources of energy like wind and solar power. In order for any of these goals to reach fruition, though, regional utilities will themselves have to build new transmission lines connecting to Tres Amigas, at significant cost. The Tres Amigas project

itself is solely an interconnection facility; like a train station without any tracks, it alone connects to nothing.

Under the Federal Power Act ("the Act"), utilities must file tariff schedules with FERC, and FERC must determine that the rates the utility plans to charge are just, reasonable, and lawful. 16 U.S.C. §§ 824d, 824e. Traditionally, utilities and FERC rely on a cost-based pricing model when assessing the reasonableness of rates. But merchant transmission developers are unlike ordinary utilities. Transmission projects have no preexisting transmission network in which costs can be determined—they seek to create a network, not operate within one—and no captive pool of customers from which they can recoup those costs. For these reasons, FERC allows transmission developers to request permission to charge reasonable negotiated rates, rather than cost-based rates. To do so, a transmission project developer must meet a set of criteria designed to ensure that the negotiated rate authority will not lead to unjust rates: among other things, the developer must have no captive customers, must not have the ability to exercise monopoly power, and must bear the full market risk of the project failing. *See Chinook Power Transmission, LLC*, 126 FERC ¶ 61,134, 61,765 (2009); *TransEnergie U.S., Ltd.*, 91 FERC ¶ 61,230, 61,838–39 (2000).

In December 2009, Tres Amigas filed an application with FERC requesting authorization to sell transmission services at negotiated rates. In its application, Tres Amigas explained that it cannot realistically use cost-based pricing because it has no captive customers and, because its beneficiaries will be in all three grid regions, it will have no regional transmission organization in which it can recover costs or determine cost-based rates. Occidental filed a motion to intervene, protest, and request summary denial of Tres Amigas's application. It

argued that Tres Amigas failed to meet the *Chinook* criteria because Tres Amigas has captive customers and would exercise monopoly power while bearing none of the project's risk. FERC found that Occidental's concerns were misplaced and approved Tres Amigas's request over Occidental's objections in March 2010. *Tres Amigas LLC*, 130 FERC ¶ 61,207 (2010). Occidental requested a rehearing, and FERC denied that request in September 2010. *Tres Amigas LLC*, 132 FERC ¶ 61,233 (2010). This petition for review followed.

## II

Before we may reach the merits of Occidental's objection, we must first be satisfied that Occidental has standing to challenge these orders. *Pub. Util. Dist. No. 1 of Snohomish Cnty. v. FERC*, 272 F.3d 607, 613 (D.C. Cir. 2001). The "irreducible constitutional minimum" of standing requires a petitioner to show a concrete injury that has either transpired or is "imminent," that is causally connected to the agency action, and that will likely be redressed by a favorable decision from this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A "conjectural or hypothetical" injury will not do. *Id.* at 560. Occidental advances three possible injuries it has suffered as a result of FERC's orders approving negotiated rate authority for Tres Amigas. All are conjectural or hypothetical. Because none meets the constitutional standard, we lack jurisdiction and dismiss Occidental's petition.

First, Occidental complains that neighboring utilities will themselves have to build transmission lines to connect to Tres Amigas. Those utilities will, Occidental argues, in turn recover the costs of that construction and connection from regional energy consumers like some of Occidental's

subsidiaries. These subsidiaries and other captive customers will thus face higher rates along those transmission lines. This parade of horribles is far too speculative to represent a "concrete" injury to Occidental. *Lujan*, 504 U.S. at 560. Even if all of these additional events transpired, Occidental's injury would be caused by some action other than FERC's approval of the orders before us.

Occidental's alleged injury necessarily relies on the premises that neighboring utilities will in fact build connecting transmission lines to Tres Amigas, *and* that they will recover costs from captive customers, *and* that doing so will mean higher rates for Occidental's subsidiaries. None of these eventualities is about to occur. First, it remains possible that no neighboring utility will successfully build a transmission line that connects to Tres Amigas. Though some utilities have apparently "stated their willingness" to do so, Pet. Br. 16, even the most enthusiastic of plans would not give rise to Occidental's injury since, as Occidental recognizes, those utilities' plans are "subject to appropriate support and favorable ratemaking treatment from . . . regulators," Payton Aff. ¶ 16 (quoting an interested utility describing its support for the project). No such support has materialized. Those connecting utilities have yet to secure siting and planning approvals, and FERC has made no decision, favorable or otherwise, regarding the rates those connecting utilities would be able to charge their customers.

Even if we knew with certainty that a given utility was going to connect to Tres Amigas, the remaining links in Occidental's chain of injury remain uncertain. All FERC has done is granted Tres Amigas the authority to negotiate the rates *it* charges connecting utilities; FERC has not granted any utility the authority to recover costs from its customers, or for that matter, to charge any given rate to its customers at all.

The question of what rate Occidental's subsidiaries will pay on future connecting lines would thus be the subject of some future FERC proceeding, at which FERC would have to determine whether *that rate* was just and reasonable. *See Tres Amigas LLC*, 132 FERC ¶ 61,233, 62,302 (2010) (order denying rehearing) (noting that if neighboring utilities connect with Tres Amigas, "their customers are protected by independent review" of rates charged). If the utility sought to shift costs to customers like Occidental's subsidiaries, FERC would have to determine at that time whether or not the benefits those customers derived from the connection were "trivial in relation to the costs sought to be shifted" to them, *Illinois Commerce Comm'n v. FERC*, 576 F.3d 470, 476 (7th Cir. 2009), and Occidental could argue then that the costs outweighed the benefits.

In fact, Occidental's very argument on the merits neatly reveals the paucity of its present injury. Occidental claims the project "fails the most basic element of FERC's merchant transmission policy because *it cannot by itself provide transmission service to anyone*" and because it is "an island that is electronically remote from each of the interconnections." Pet. Br. 9, 23–24 (emphasis added). But an island that "leaves it to the neighboring utilities to fund the construction of the interconnecting" lines, Pet. Br. 27, poses no imminent danger to Occidental. Since the Tres Amigas project can itself transmit no energy, it would be other utilities, their independent decisions to connect to the project, and FERC's future approval of the rates they may charge that may cause an injury to Occidental. Such an injury would result from some future agency action; it is therefore "not traceable" to the agency's present action. *Commuter Rail Div. of Reg'l Transp. Auth. v. Surface Transp. Bd.*, 608 F.3d 24, 31 (D.C. Cir. 2010).

In short, FERC has simply not yet determined or approved the rates Occidental's subsidiaries will pay—it has not even *been asked* to do so—so it is impossible to say now that Occidental has been harmed. Occidental's theory of injury "stacks speculation upon hypothetical upon speculation, which does not establish an actual or imminent injury." *New York Reg'l Interconnect v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011).

Occidental responded at oral argument that although it will be able to challenge rates set by connecting utilities at future FERC proceedings, the sixty-day window for a challenge to a FERC order set out in the Act, 16 U.S.C. § 825*l*(b), means this is the only opportunity to challenge the decision to grant Tres Amigas negotiated rate authority, Oral Arg. 8:30–11:10. Even if Occidental were correct, it goes astray in insisting there is something unjust about that result. This supposed "catch-22," as Occidental puts it, is a red herring: Occidental cannot challenge the negotiated rate orders in this Court because Occidental cannot show an injury in fact. Occidental's lamentations about the absurdity of the "catch-22" thus seem to confuse a result which means *it* cannot challenge these negotiated rate orders with a result which means *no one* can challenge these orders. *See* Pet. Reply Br. 8. The latter is plainly not true; some entity actually harmed by the negotiated rate orders—perhaps a competing transmission project or one of the prospective connecting utilities—could have challenged them. And Occidental, for its part, will have every opportunity to challenge any future orders which *do* harm its subsidiaries.

Occidental's remaining alleged injuries suffer from the same flaws. Occidental claims the FERC orders failed to "impose sufficiently stringent limitations" that would "ensure that Tres Amigas's transmission rates will be held to a just

and reasonable level." Pet. Br. 18–19. This failure, Occidental argues, will increase the energy prices "ultimately paid" by its consumer subsidiaries and reduce the profit margins of its wholesale seller and marketing subsidiaries. *Id.* But because FERC "has not yet determined . . . rates," Occidental's fear of a "possible rate increase in the future" is "not enough to show the requisite injury." *PNGTS Shippers' Grp. v. FERC*, 592 F.3d 132, 137 (D.C. Cir. 2010). To be sure, we have said that the "failure to impose more stringent limitations on the prices that . . . utilities would be allowed to charge" is a cognizable injury, *Envtl. Action v. FERC*, 996 F.2d 401, 407 (D.C. Cir. 1993), but we have always required actual, decided-upon numbers and limitations before finding an injury—"rate ceilings," in that case, *id.* at 405—because without them, we would have no way of assessing a claim of unreasonableness. Here, FERC has made no such decision, and once rates are set, Occidental will have the chance to challenge them. *See Sacramento Mun. Util. Dist. v. FERC*, 616 F.3d 520, 542 (D.C. Cir. 2010). For now, all Occidental has is its concern that FERC's safeguards will "ultimately" prove too weak. This is sheer speculation.

Moreover, Occidental cannot even show it will necessarily suffer the kind of injury discussed in *Environmental Action*. As Occidental acknowledges, it is just a "potential" customer of Tres Amigas and will not "transfer electric energy or ancillary services over the facility" if Tres Amigas raises its prices "above a competitive rate." Payton Aff. ¶ 26. In other words, Occidental plans to avoid the injury caused by uncompetitive prices by not marketing or selling energy routed through the Tres Amigas facility. As a result, all it has is an "interest in [this] problem," which does not satisfy the "requirement of aggrievement" for standing. *City of Orrville v. FERC*, 147 F.3d 979, 985 (D.C. Cir. 1998). Because Tres Amigas's rates may not be unjust, because

Occidental may not choose to pay them, and because, if the rates are unjust and Occidental wants to challenge them, it has the chance to seek relief from FERC in the future, this alleged injury is also neither cognizably concrete nor traceable to the orders under review.

Finally, Occidental claims that its power marketing subsidiaries will suffer increased competition.[1]  We have held that "parties suffer constitutional injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition," *Louisiana Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998), but no such increased competition has happened yet, nor is it even imminent, *Sherley v. Sebelius*, 610 F.3d 69, 73 (D.C. Cir. 2010) ("[T]he basic requirement common to all our cases is that the complainant show an actual or imminent increase in competition.").  The orders under review did not authorize or create transmission lines connected to Tres Amigas, nor did they lift any restrictions on those lines.  Occidental has also not even shown that, should those lines be built, cheaper power will flow through them and cause Occidental's subsidiaries to actually lose business or lower their prices.  As we explained in *DEK Energy Co. v. FERC*, 248 F.3d 1192, 1196 (D.C. Cir. 2001), "We recognize that whenever a . . . vendor secures transport capacity that enables it to ship [power] closer to another vendor at competitive rates, the latter may perceive an increased risk of competition.  But [there is only] some vague probability that any [power] will actually reach that market and a still lower probability that its arrival will cause [petitioner] to lose business or drop its

---

[1] Occidental argues its ancillary service subsidiaries will also face increased competition, but FERC expressly reserved this issue for another proceeding. *Tres Amigas LLC*, 130 FERC ¶ 61,207, 61,909 (2010).

prices.  More is needed to move an injury from 'conjectural' to 'imminent.'"  Occidental has not shown anything more, so this final claim of injury is, like the others, insufficient to confer standing.

### III

Because Occidental lacks standing to challenge the orders before the Court, we dismiss the petition for review and express no opinion on the merits of Occidental's objections.

*So ordered.*