# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 19, 2014          Decided July 1, 2014

No. 12-1470

NO GAS PIPELINE,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

STATOIL NATURAL GAS, LLC, ET AL.,
INTERVENORS

Consolidated with 12-1474, 12-1475

On Petitions for Review of Order of the
Federal Energy Regulatory Commission

*John J. Zimmerman* argued the cause for Environmental Petitioners. With him on the briefs was *Carolyn Elefant*.

*Jason T. Watson* argued the cause and filed the briefs for petitioner Jersey City. *Derek S. Fanciullo* entered an appearance.

*Jennifer S. Amerkhail*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the

brief were *David L. Morenoff*, Acting General Counsel, and *Robert H. Solomon*, Solicitor.

*John P. Elwood* argued the cause for intervenors. With him on the brief were *Anita R. Wilson*, *Andrew N. Beach*, *Jeremy C. Marwell*, *Steven E. Hellman*, *Kirstin E. Gibbs*, *Christopher M. Heywood*, *Peter P. Garam*, and *Shira R. Rosenblatt*.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: The Federal Energy Regulatory Commission ("FERC") entered an order granting a certificate of public convenience and necessity for the construction of a natural gas pipeline connecting New York and New Jersey ("NJ-NY Project" or "Project"). The city of Jersey City and a coalition of environmental groups filed separate petitions for review on differing grounds. For the reasons set forth below, we conclude that we do not have jurisdiction over any of the petitions, and we will therefore dismiss all without reaching the merits of any.

## BACKGROUND

The Natural Gas Act ("NGA") requires entities seeking to construct natural gas facilities to obtain a certificate of public convenience and necessity from FERC. 15 U.S.C. § 717f(c)(1)(A). In the proceeding under review, the Commission granted such a certificate to two subsidiaries of Spectra Energy Corporation, Texas Eastern Transmission, LP and Algonquin Gas Transmission, LLC (collectively "Spectra"), to expand its existing natural gas transportation pipeline in

Connecticut and New Jersey, and to extend a new pipeline from New Jersey into lower Manhattan in New York. *See Tex. E. Transmission, LP*, 139 FERC ¶ 61,138 P.7 (2012).

Three environmentalist groups, NO Gas Pipeline, Sierra Club, and Food & Water Watch (collectively "environmental petitioners"), filed two petitions for review of the order, alleging that FERC did not comply with the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, in the proceedings and grant of the certificate. The city of Jersey City filed a separate petition for review, arguing that FERC could not constitutionally conduct the proceedings and grant the order because its financial structure created "possible temptation" to be biased in favor of pipeline companies, and also, that FERC exercised actual bias in violation of "either Due Process or the APA." Jersey City Br. at 2. None of the petitions brings the order for review within the jurisdiction of this court. The environmental petitioners lack standing, and the petition of Jersey City raises questions not preserved in the administrative proceedings.

In addition to the NGA requirement that entities seeking to construct natural gas facilities obtain a certificate of public convenience and necessity from FERC, the NEPA imposes requirements on agencies such as FERC to prepare environmental impact statements in compliance with the Act. 42 U.S.C. § 4321 *et seq.* In processing the application of Spectra, FERC issued a draft environmental impact statement ("DEIS") on September 9, 2011, and a final environmental impact statement ("FEIS") on March 16, 2012. In the course of the environmental review, FERC received hundreds of comments, including expressions of concerns over the level of radon present in natural gas and radon's effect on indoor air quality. The Commission responded to these concerns, ultimately concluding that radon from home use of natural gas was not likely to pose a hazard, and citing factors which in

FERC's view would reduce radon in natural gas.

FERC approved the project on May 21, 2012. Environmental petitioners had moved to intervene on January 26, 2011, and filed their concerns about the radon and also about the possibility of cyber attacks on Spectra's computer systems, which they believed could result in explosions. After the March 16, 2012, release of the FEIS, environmental petitioners moved to supplement the record with a study regarding radon from Marcellus Shale gas. Spectra requested leave to respond on the radon issue and did so with a substantive response and two additional radon studies. On May 21, 2012, FERC issued its order granting the certificates of convenience and necessity. *See* 139 FERC ¶ 61,138. In the order granting the certificates, FERC addressed the radon issue and made specific reference to the Marcellus Shale gas, noting that the proposed pipeline expansion "is not designed to serve as a gathering system for gas from Marcellus Shale." *Id.* at P.73. Petitioners sought rehearing. On October 18, 2012, FERC entered its order denying rehearing. 141 FERC ¶ 61,043. In the rehearing order, FERC addressed the newly submitted radon studies, *id.* at P.49-56, and the environmental petitioners' comments concerning the risk of cyber attack on Spectra's control systems, *id.* at P.60-65. The environmental groups filed their current petitions for review.

## STANDING

We will not reach the merits of environmental petitioners' claims, because we have no jurisdiction to do so. It is fundamental to federal jurisprudence that Article III courts such as ours are courts of limited jurisdiction. Therefore, "we must examine our authority to hear a case before we can determine the merits." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 47 (D.C. Cir. 1999) (citing *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83 (1998)). In order for us to have jurisdiction over a case or controversy, the party bringing the claim bears the burden of establishing that it has standing. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The "irreducible constitutional minimum of standing contains three elements." *Id.* at 560. These elements require that the plaintiffs must have suffered first an "injury in fact"; second, the injury must be "fairly traceable to the challenged action of the defendant"; and third, the injury must be redressable by a favorable decision in the litigation. *Id.* at 560-61 (internal punctuation and citations omitted). Environmental petitioners' claims founder on at least the first two of the required elements.

These petitioners seek to proceed under associational standing. To establish Article III standing as an association, at least one member must meet the three elements set forth in *Lujan*. First, the member or members must have suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (quotations omitted). Petitioners have provided the court with affidavits demonstrating the reasons why their members object to the pipeline, but nothing in the affidavits establishes an injury in fact satisfying the constitutional minimum set forth in *Lujan*.

Environmental petitioners, or at least some of them, submit declarations attesting that their members are "injured by the certainty that radon levels in the residences will increase *once* gas from sources that have higher radon levels . . . than currently supplied gas *begins to flow* through [the proposed] pipelines into their homes." Env. Pets. Br. at 13 (emphasis added). This will not carry petitioners' burden of establishing standing. In order to establish injury in fact, claimants must demonstrate "concrete" injury. *See, e.g.*, *Occidental Permian Ltd. v. FERC*, 673 F.3d 1024, 1026 (D.C. Cir. 2012). The "irreducible

constitutional minimum" referenced in *Lujan* requires the showing of "a concrete injury that has either transpired or is 'imminent.'" *Id.* A "conjectural or hypothetical" injury is not sufficient. *See Lujan*, 504 U.S. at 560.

The affidavits from petitioners' members express concerns over injuries that have neither occurred nor become imminent. The increased risk to their health is something that may occur if the pipeline or the pipeline suppliers tap into gas that has more radon than the current mix; nothing occurs to alleviate any increased radon in that case; the radon does not become diluted by mixing with other gas; and the radon in fact reaches and permeates their homes. Like the injuries claimed in *Occidental Permian*, these concerns are "far too speculative to represent a concrete injury" establishing standing. 673 F.3d at 1026 (internal quotation marks omitted).

Neither do petitioners' declarations carry their burden with respect to the second element of standing: causation. Causation requires that the injury "be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal punctuation and citations omitted). For the speculative injuries to occur here, the producers and transporters of the gas would need to have chosen high radon shale gas as the sole or predominant source of the gas transported by the project, then transported and delivered the gas without in some fashion diluting or processing it so as to reduce the radon content to something approaching that of the gas petitioners are presently receiving. Then, and only then, would the projected injury become imminent, and *possibly* occur. Again, petitioners have failed in carrying their burden of establishing standing. We will not reach the merits of their radon-based claim, as we do not have jurisdiction.

Likewise, we lack jurisdiction over petitioners' claims of potential harm from the safety of the pipeline operations, and specifically, the danger of cyber terrorism. Without rehashing the requirements for establishing constitutional standing set forth in the discussion of the radon claims, we note that the same infirmities exist with respect to the second set of claims. There is no showing that any such danger is either actual or imminent. There is no showing that it could occur without the intervening acts of third parties.

## JERSEY CITY'S PETITION

Jersey City brings a claim more fundamental than that of petitioners. We might also describe it as novel, and even creative. Briefly put, the City contends that FERC cannot constitutionally regulate the pipeline industry. In more detail, Jersey City reasons that due process "requires fair adjudicative proceedings before neutral and detached decisionmakers." Jersey City Br. at 14 (citing *Ward v. Vill. of Monroeville*, 409 U.S. 57, 59-60 (1972)). Thus, petitioner argues, the Constitution mandates adjudicative proceedings free from actual bias, and the appearance of bias. *Id.* (citing *In re Murchison*, 349 U.S. 133, 136 (1955)). Jersey City then analyzes the financial structure of FERC and notes that under the applicable statutory scheme, FERC receives its funding from the pipeline industry, not from the taxpayers. Thus, Jersey City reasons, FERC is beholden to the pipelines applying to it for certificates, and may not constitutionally adjudicate their application.

Once again, we cannot consider the merits of the petition, as we have no jurisdiction. This is true for multiple reasons. First, Jersey City asserts that we have jurisdiction under the Natural Gas Act, 15 U.S.C. § 717r(b). That section provides that any party "aggrieved by an order issued by the Commission [in a proceeding under this chapter] may obtain a review of such

order" in this court. But petitioner's claim does not come within the jurisdictional grounds of this statute. Although petitioner claims to be an aggrieved party, it has not demonstrated how it has been injured and indeed does not challenge any part of FERC's ruling either as to its reasoning, its findings, or any decision in the administrative proceeding. The petition simply does not meet the parameters of 15 U.S.C. § 717r(b). Jersey City is not actually seeking review of the order.

Insofar as Jersey City sets forth a statutory quarrel, its complaint is against the Budget Act and the financial structure that it creates. It is that provision that sets forth the funding of the Commission by assessments, not the Natural Gas Act, and certainly not the order which Jersey City purports to bring before us. Jersey City's claims do not come within the jurisdictional grant of § 717r(b).

We do not have original jurisdiction over claims arising from the Budget Act. We have never seen a claim directly parallel to the one asserted by Jersey City, but we have observed in other contexts that "[i]nitial review occurs at the appellate level only when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action." *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007). As we observed in *Watts*, "Congress is free to 'choose the court in which judicial review of agency decisions may occur.'" *Id.* (quoting *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1439 (D.C. Cir. 1988)). As we further observed in *Watts*, "[b]ecause district courts have general federal question jurisdiction under 28 U.S.C. § 1331, the 'normal default rule' is that 'persons seeking review of agency action go first to district court rather than to a court of appeals.'" *Id.* at 505 (quoting *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994)). There is no statute that takes this petition outside that normal rule. The NGA gives us jurisdiction

to review orders in proceedings under that Act, not claims unanchored in pipeline proceedings but arising under the Budget Act. We have no jurisdiction.

With respect to this conclusion, we stress the narrowness of our jurisdictional holding. The precise direct-review statute at issue in this case allows a party aggrieved by a FERC order issued under the Natural Gas Act to "obtain a review of such *order*." 15 U.S.C. § 717r(b) (emphasis added). Here, however, Jersey City does not target any aspect of FERC's actual decision and there is no claim properly before us that the process that produced the decision was tainted by actual bias or some other improper motivation. Instead, the City's claim centers *wholly* on another statute (the Budget Act), which lacks a direct-review provision. Furthermore, the nature of the precise claim raised by Jersey City—a constitutional challenge to FERC's funding structure—potentially implicates factual issues not explored in the record (*e.g.*, the extent to which FERC's financial needs will increase with time and the ability of existing pipeline companies to absorb these costs and remain profitable) because the claim is so tangential to the substance of the order. This prospect further counsels against reading 15 U.S.C. § 717r(b) as granting us jurisdiction over Jersey City's claim because, as Congress must surely be aware, this court, unlike the district court, is not well equipped to make factual determinations. *See Doe v. Gen. Hosp. of Dist. of Columbia*, 434 F.2d 427, 432 (D.C. Cir. 1970). Thus, given this unique set of circumstances, and with the understanding that this opinion leaves intact our existing precedent, *see, e.g.*, *AirLine Pilots Ass'n v. CAB*, 750 F.2d 81 (D.C. Cir. 1984), as it must, *see United States v. Carson*, 455 F.3d 336, 384 n.43 (D.C. Cir. 2006) (per curiam) ("[W]e are, of course, bound to follow circuit precedent absent contrary authority from an en banc court or the Supreme Court."), we conclude that we lack jurisdiction.

Again, lest we overlook anything which we should address, we note that Jersey City has made no real attempt to demonstrate standing. We further note that while Jersey City asserts that there is actual bias and not merely an appearance, it provides no foundation upon which we could review that claim. Its only asserted basis for the actual bias is that FERC has consistently granted applications from pipelines. This adds nothing to the strength of an otherwise unsupported claim. Presumably under most regulatory schemes, by the time applicants and their expert counsel have worked through changes, adaptations, and amendments, they are not likely to pursue many certificates that are hopeless. The fact that they generally succeed in choosing to expend their resources on applications that serve their own financial interests does not mean that an agency which recognizes merit in such applications is biased.

We finally note that Jersey City's alleged constitutional claim of actual bias is also barred as untimely. Jersey City has shown us nothing of record to establish that it raised this issue before FERC's issuance of the initial order. FERC regularly rejects requests for rehearing that raise issues not previously presented where there is no showing that the issue is "based on matters not available for consideration . . . at the time of the final decision." 18 C.F.R. § 385.713(c)(3); *see also* Rehearing Order P.19 and nn.29-30. As we have noted in the context of a different agency, a disqualification request in a petition for reconsideration to the agency comes too late. *Lead Indus. Ass'n, Inc. v. EPA*, 647 F.2d 1130, 1174 (D.C. Cir. 1980) ("[A] litigant who neglect[s] to present his constitutional claim to the administrative agency in timely fashion [may] be precluded from raising it before the reviewing court."). For all the reasons set forth above, Jersey City's petition will also be dismissed for lack of jurisdiction.

## **CONCLUSION**

In short, the petitions are dismissed.