# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 22, 2018    Decided July 10, 2018

No. 17-5084

DELAWARE RIVERKEEPER NETWORK AND MAYA VAN
ROSSUM,
APPELLANTS

v.

FEDERAL ENERGY REGULATORY COMMISSION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00416)

*Jordan Yeager* argued the cause for appellants. With him on the briefs was *Aaron Stemplewicz.*

*Christopher D. Ahlers* was on the brief for *amicus curiae* Clean Air Council supporting plaintiff-appellants and supporting reversal of the decision below.

*Ross R. Fulton*, Attorney, Federal Energy Regulatory Commission, argued the cause for appellees. With him on the brief were *James P. Danly*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Jeremy C. Marwell* argued the cause for intervenor-appellee PennEast Pipeline Company, LLC. With him on the brief were *Michael B. Wigmore*, *Matthew X. Etchemendy*, *Frank H. Markle*, and *James D. Seegers*.

*Melissa N. Patterson*, Attorney, U.S. Department of Justice, argued the cause for *amicus curiae* United States of America. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jessie K. Liu*, U.S. Attorney, and *Scott R. McIntosh*, Attorney.

*Erika Maley* and *William R. Levi* were on the brief for *amici curiae* Interstate Natural Gas Association of America supporting appellees.

Before: GRIFFITH and KATSAS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: This appeal presents broad due-process challenges to how the Federal Energy Regulatory Commission conducts business. By statute, FERC is required to recover its costs from regulated industries. The appellants contend that this improperly incentivizes the Commission to approve new natural-gas pipelines, in order to ensure itself future funding sources. The appellants also challenge FERC's use of tolling orders to meet its statutory deadlines for acting on applications for rehearing.

I

The Natural Gas Act requires companies to obtain a "certificate of public convenience and necessity" before constructing facilities to transport natural gas in interstate

commerce. 15 U.S.C. § 717f(c)(1)(A). FERC must issue a certificate to a qualified applicant if the proposed project is "required by the present or future public convenience and necessity," subject to any reasonable terms and conditions imposed by the Commission. *Id.* § 717f(e).

FERC, a Commission within the Department of Energy, receives annual appropriations fixed by Congress. 42 U.S.C. § 7171(j). However, the Omnibus Budget Reconciliation Act of 1986 ("Budget Act") requires FERC to "assess and collect" from the various industries that it regulates, including the natural-gas industry, "fees and annual charges in any fiscal year in amounts equal to all of the costs incurred by the Commission in that fiscal year." *Id.* § 7178(a)(1). These receipts must be "credited to the general fund of the Treasury." *Id.* § 7178(f).

A party "aggrieved by an order issued by the Commission in a proceeding under" the Natural Gas Act may seek rehearing. 15 U.S.C. § 717r(a). "Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied." *Id.* The aggrieved party then may seek judicial review, in the court of appeals, "within sixty days after the order of the Commission upon the application for rehearing." *Id.* § 717r(b).

In 2015, intervenor PennEast Pipeline Co. sought a certificate to build a 114-mile natural-gas pipeline running through Pennsylvania and New Jersey. Appellants Delaware Riverkeeper Network and its director Maya van Rossum (collectively "Riverkeeper") intervened to oppose the project.

In 2016, while FERC was still reviewing the proposal, Riverkeeper filed a complaint seeking declaratory relief against the Commission and its members. The complaint alleges that FERC's funding structure creates structural bias, in violation of the Due Process Clause of the Fifth Amendment, by

incentivizing the Commission to approve new pipelines in order to secure additional sources for its future funding. The complaint also challenges the Commission's use of tolling orders to satisfy its 30-day deadline for acting on rehearing applications. Those tolling orders grant rehearing for the limited purpose of giving the Commission more time to consider pending applications. In the meantime, the complaint alleges, FERC routinely allows construction to proceed on approved projects. According to Riverkeeper, this frustrates judicial review, again in violation of the Due Process Clause.

After PennEast intervened as a defendant in the district court, the Commission and PennEast moved to dismiss the complaint. They argued that Riverkeeper had not identified any liberty or property interest protected by the Due Process Clause and that, in any event, FERC provides all the process that is due. The district court agreed with both points and dismissed the complaint for failure to state a claim. *Del. Riverkeeper Network v. FERC*, 243 F. Supp. 3d 141 (D.D.C. 2017). This appeal followed.

II

Cases involving the Commission typically come to us as petitions for review of final agency orders, not as appeals from the district court. We therefore begin by explaining why this case is properly before us.

In *NO Gas Pipeline v. FERC*, 756 F.3d 764 (D.C. Cir. 2014), this Court held that the judicial-review provision in the Natural Gas Act does not apply to the kind of structural-bias claim at issue here. We reasoned that such a claim "does not target any aspect of FERC's actual decision" in any individual proceeding under the Natural Gas Act, but instead "centers *wholly* on" the Budget Act. *Id.* at 769. Therefore, we concluded, such a claim may be brought only in district court.

*See id.* We emphasized the "narrowness of our jurisdictional holding," and we distinguished structural-bias claims from claims that a specific FERC decision "was tainted by actual bias or some other improper motivation." *Id.*

Under *NO Gas Pipeline*, Riverkeeper properly filed this case in the district court. Its principal claim targets the Budget Act's funding mechanism rather than any individual decision to award a certificate of public necessity. Therefore, the Natural Gas Act does not channel judicial review directly to the courts of appeals, and so the district court retained its federal-question jurisdiction under 28 U.S.C. § 1331.

We also conclude that Riverkeeper established Article III standing. Although FERC does not renew its standing objections on appeal, Article III standing is an element of subject-matter jurisdiction, so we must consider that issue regardless. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). As the district court explained, several named members of the Delaware Riverkeeper Network— including Ms. van Rossum—filed declarations alleging aesthetic, recreational, and property injuries that they would likely suffer if a specific, identified natural-gas pipeline were approved by FERC and built. *See* 243 F. Supp. 3d at 150–51. At this stage of the case, these unchallenged declarations suffice to establish the individual standing of Ms. van Rossum and the representational standing of the Network. *See*, *e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009); *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011).

Finally, we conclude that Riverkeeper has a viable cause of action. The Supreme Court has recognized an implied action for prospective relief against allegedly unconstitutional actions by federal officials, which FERC does not dispute extends to

it.  *See*, *e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). Moreover, Congress has waived federal sovereign immunity for claims seeking "relief other than money damages."  *See* 5 U.S.C. § 702; *Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006).

## III

The Due Process Clause of the Fifth Amendment forbids the federal government from depriving a person of "life, liberty, or property, without due process of law."  To determine whether Riverkeeper has stated a valid due-process claim, "[w]e first ask whether there exists a liberty or property interest of which a person has been deprived."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).  If so, "we ask whether the procedures followed … were constitutionally sufficient." *Id.*  We review *de novo* the district court's dismissal for failure to state a claim, and we accept the complaint's well-pleaded factual allegations as true.  *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 314 (D.C. Cir. 2014).

## A

Riverkeeper seeks to ground its due-process claim in environmental interests and in real-property interests created under Pennsylvania law.  We examine each in turn.

## 1

In 1971, the Pennsylvania Environmental Rights Amendment inserted into the state constitution certain protections for the environment.  The Amendment states:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, § 27. Riverkeeper contends that this right to clean air, pure water, and preservation of the environment creates a protected liberty or property interest as a matter of federal due process. It further contends that this right constrains FERC in its administration of federal law. The district court rejected these contentions, as do we.

To begin, the Environmental Rights Amendment creates no federally protected liberty interest. The Amendment bears no relationship to the quintessential liberty interest—"freedom from bodily restraint." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972) (quotation marks omitted). Nor does it protect activities that have been held to constitute federally protected liberty interests, such as "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men." *Id.* (quotation marks and ellipses omitted). Riverkeeper believes that "a healthy environment" is a "necessary backdrop" for such rights to be "truly meaningful." Appellants' Br. 23. Perhaps so, but that hardly suggests that the right to a healthy environment can itself fairly be described as a "liberty" interest. Under *Roth*, it cannot.

As for property interests, they "are not created by the Constitution." *Roth*, 408 U.S. at 577. Instead, "their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quotation marks omitted). But despite these "state-law underpinnings," the question whether the asserted interest "rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause" is ultimately one of "federal constitutional law." *Id.* at 756–57 (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)).

The Supreme Court has established several guideposts bearing on when a state-created right or benefit qualifies as "property" for due-process purposes. For one thing, "'a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of [the benefit]. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock*, 545 U.S. at 756 (quoting *Roth*, 408 U.S. at 577). Even for entitlements, "[t]he hallmark of a protected property interest is the right to exclude others," which is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999) (quotation marks omitted). Moreover, the Due Process Clause does not protect rights that are vague or indeterminate—a person cannot be "safely deemed 'entitled' to something when the identity of the alleged entitlement is vague." *Town of Castle Rock*, 545 U.S. at 763. Furthermore, "an entitlement must have 'some ascertainable monetary value' in order to 'constitute a "property" interest'" for due-process purposes. *Roberts v. United States*, 741 F.3d 152, 162 (D.C. Cir. 2014) (quoting *Town of Castle Rock*, 545 U.S. at 766). Finally, courts consider the extent to which the right "resemble[s] any

traditional conception of property." *Town of Castle Rock*, 545 U.S. at 766.

Under these principles, the state-created right to clean air, pure water, and preservation of the environment does not qualify as a federally protected "property" interest.

Most importantly, the Environmental Rights Amendment creates no right to exclude—or anything like it. To the contrary, its first sentence vests the single "right" at issue collectively in "[t]he people," its second sentence confirms that "Pennsylvania's public natural resources are the *common* property of *all* the people," and its third sentence requires the Commonwealth to conserve and maintain environmental resources "for the benefit of *all* the people." Pa. Const. art. I, § 27 (emphases added). Moreover, although the Supreme Court of Pennsylvania has held that the Amendment is judicially enforceable by private individuals, it has also confirmed that the right the Amendment creates is shared equally by all Pennsylvanians. *See Penn. Envtl. Def. Found. v. Pennsylvania*, 161 A.3d 911, 931 (Pa. 2017); *Robinson Twp. v. Pennsylvania*, 83 A.3d 901, 951 & n.39 (Pa. 2013) (plurality opinion). In other words, no Pennsylvanian may exclude any other from the right to clean air, pure water, and a preserved environment. So, the Amendment protects not private property rights, but public goods. In that respect, it is like "the right that we all possess to use the public lands"—which for due-process purposes "is not the 'property' right of anyone." *Coll. Sav. Bank*, 527 U.S. at 673.

The Amendment is also too vague and indeterminate to create a federally cognizable property interest. As the Pennsylvania Supreme Court has acknowledged, the Amendment articulates only "broad" and "relative" principles, so "the courts generally defer to agency expertise in making a

factual determination whether the benchmarks [of the Amendment] were met." *Robinson Twp.*, 83 A.3d at 949, 953. To be sure, that Court also believes itself "equipped" to apply and enforce the Amendment in individual cases. *See id.* at 953. But for federal due-process purposes, the question whether the Amendment is too vague to create a property right is a federal constitutional question. *See Town of Castle Rock*, 545 U.S. at 763. In this case, moreover, Riverkeeper invokes nothing more than the bare text of the Amendment. Without further guidance on what constitutes sufficiently clean air, sufficiently pure water, and sufficient preservation of natural, scenic, historic and aesthetic environmental values, we cannot say that a FERC decision to authorize the construction of a natural-gas pipeline, as required by its view of the public convenience and necessity, implicates any federally protected property right.[1]

The Amendment is unlike traditional or even new property in yet other respects. For one thing, the right to a preserved environment cannot be bought or sold—and thus has no "ascertainable monetary value," as the Supreme Court's "property-as-entitlement cases have implicitly required." *Town of Castle Rock*, 545 U.S. at 766 (quotation marks omitted). Moreover, environmental quality depends on many factors beyond Pennsylvania's control—including acts of other governments, acts of millions of private parties, and natural phenomena ranging from catastrophic events to ordinary weather patterns. Whereas fair adjudicatory process can reliably protect state-created entitlements to a promised

---

[1]  Riverkeeper's reliance on the bare text of the Amendment distinguishes this case from *In re Application of Maui Electric Co.*, 408 P.3d 1 (Haw. 2017). There, the plaintiffs invoked much more detailed state environmental statutes to support their due-process claim, *see id.* at 13, and the Hawaii Supreme Court rooted its decision in those statutes rather than in some "freestanding interest in general aesthetic and environmental values," *id.* at 16.

government job, *Roth*, 408 U.S. at 576–77, or a promised government welfare benefit, *Goldberg v. Kelly*, 397 U.S. 254 (1970), it cannot guarantee a well-preserved environment.

Finally, the rights created by the Amendment bind only state and local government, not the federal government. The Amendment appears within the Declaration of Rights of the Pennsylvania Constitution, which sets forth a "social contract" between the Commonwealth of Pennsylvania and its people. *See Robinson Twp.*, 83 A.3d at 947. The Declaration's various provisions—many of which track the federal Bill of Rights— thus confer rights specifically as against the Commonwealth. *See*, *e.g.*, Pa. Const. art. I, § 3 (religious freedom); *id.* art. I, § 6 (trial by jury); *id.* art. I, § 7 (freedom of press and speech). Riverkeeper cites no precedent even remotely suggesting that these *state* constitutional rights purport to impose substantive obligations on the *federal* government. To the contrary, the Pennsylvania Supreme Court repeatedly has described the Declaration of Rights as limiting only the power of "state government," *Robinson Twp.*, 83 A.3d at 948; *see also Penn. Envtl. Def. Found.*, 161 A.3d at 930–31, and the Amendment likewise as binding only "state or local" government, *Robinson Twp.*, 83 A.3d at 952; *see also Penn. Envtl. Def. Found.*, 161 A.3d at 931.

For all of these reasons, we conclude that the Environmental Rights Amendment does not create federally protected liberty or property interests, much less ones that FERC could infringe.

2

Riverkeeper also invokes the interests of its members who own real property along the path of proposed pipelines. Once FERC issues a certificate of public convenience and necessity, the pipeline company may acquire the necessary rights-of-way

through eminent domain. 15 U.S.C. § 717f(h). If and when that happens, the landowner will be entitled to just compensation, as established in a hearing that itself affords due process. *See*, *e.g.*, *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956). But the Natural Gas Act ensures such a hearing, in providing that any eminent-domain action "shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." 15 U.S.C. § 717f(h). Due process requires no more in the context of takings where, despite Riverkeeper's suggestion to the contrary, there is no right to a pre-deprivation hearing. *See*, *e.g.*, *Bailey v. Anderson*, 326 U.S. 203, 205 (1945); *Presley v. City of Charlottesville*, 464 F.3d 480, 489–90 (4th Cir. 2006).

B

Regardless of whether any protected liberty or property interests are implicated, the Commission is not a structurally biased adjudicator, and its use of tolling orders is not facially unconstitutional.

1

Riverkeeper's structural-bias claim focuses on FERC's statutory obligation to recover its expenses from the industries that it regulates. In *NO Gas Pipeline*, we described that claim as "novel, and even creative." 756 F.3d at 768. Today, we reject it.

Like most federal agencies, FERC receives annual appropriations from Congress. *See* 42 U.S.C. § 7171(j); Consolidated Appropriations Act, 2018, div. D, tit. III, 132 Stat. 348, 527. But the Budget Act requires FERC to "assess and collect" from the various industries that it regulates "fees and annual charges in any fiscal year in amounts equal to all of

the costs incurred by the Commission in that fiscal year." 42 U.S.C. § 7178(a)(1). These receipts must be "credited to the general fund of the Treasury." *Id.* § 7178(f). As the fees are received, FERC's appropriation is reduced until the net expenditure from the Treasury is "not more than $0." *See*, *e.g.*, Consolidated Appropriations Act, 2018, 132 Stat. at 527. FERC also must make yearly adjustments in its assessments to "eliminate any overrecovery or underrecovery of its total costs." 42 U.S.C. § 7178(e).

Due process requires an "impartial and disinterested" adjudicator, *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980), and prohibits structures that might lead the adjudicator "not to hold the balance nice, clear and true," *Tumey v. Ohio*, 273 U.S. 510, 532 (1927). Three Supreme Court decisions— each involving a mayor's court—elaborate on this doctrine.

In *Tumey*, the Court held that an adjudicator cannot have "a direct, personal, substantial pecuniary interest" in reaching a particular outcome. 273 U.S. at 523. There, the mayor had executive duties and could also try certain crimes and fine those whom he found guilty. *See id.* at 519, 533. Part of each fine supplemented the mayor's salary, and part was deposited into the village's general fund, over which the mayor had significant control. *See id.* at 518–21, 532–33. The Court held that the mayor had impermissible personal and official interests in securing convictions, which would supplement both his individual income and his government budget. *Id.* at 523, 535.

On the opposite end of the spectrum is *Dugan v. Ohio*, 277 U.S. 61 (1928). There, the mayor served as one of five members of a city commission, and his individual duties were judicial but not executive. *See id.* at 63. Fines were deposited into the same general fund from which the mayor's salary was paid, but the Court stressed that the salary itself was "not

dependent on whether he convicts in any case or not." *Id.* at 65. Moreover, because the mayor individually lacked any executive duties, he had no direct incentive to build up the fund. *Id.* at 64–65. Finally, although the city commission on which the mayor served set his salary and itself had executive duties, those connections to the mayor's "fines as a judge" were too "remote" to violate due process. *See id.* at 65.

*Ward v. Village of Monroeville*, 409 U.S. 57 (1972), involved an intermediate situation—a mayor who individually performed both executive and judicial functions, but whose salary did not depend on fines from convictions. *Id.* at 57–58. The revenue from the fines did constitute a "substantial portion of the municipality's funds." *Id.* at 59. Focusing on the mayor's "executive responsibilities for village finances," the Court held that this structure created an impermissible incentive for the mayor "to maintain the high level of contribution from [his] court." *Id.* at 60.

This case is controlled by *Dugan*. Here, as there, the adjudicator does not control the funds collected—FERC's fees and charges are "credited to the general fund of the Treasury," 42 U.S.C. § 7178(f), not placed into its own coffers. Moreover, the Commission's budget, like the mayor's salary in *Dugan*, is fixed by a distinct legislative body. As explained above, Congress sets FERC's annual appropriation, *see id.* § 7171(j), and it is a criminal offense for agency officials to spend even one penny more, *see* 31 U.S.C. §§ 1341(a)(1)(A), 1350. Moreover, whereas the mayor in *Dugan* could have increased the city's revenues by adjudicating more convictions, FERC can do nothing analogous, because Congress has specified the total amount it is to charge: Regardless of how many pipelines FERC may approve, it "shall" charge, for each year, a total amount "equal to all of the costs incurred by the Commission in that fiscal year." *Id.* § 7178(a)(1). Likewise, whereas the

mayor in *Dugan* sat on the five-member body that fixed his salary and exercised control over incoming fines, *see* 277 U.S. at 65, FERC commissioners enjoy no comparable degree of influence over Congress. In light of *Dugan*, FERC's funding structure is clearly constitutional.

Riverkeeper worries about long-term incentives: the more pipelines that FERC approves in the present, the greater its ability to seek larger appropriations from Congress in the future. But similar theoretical concerns existed in *Dugan*, where the mayor could have sought future raises based on the amount of revenue that he had already secured for the city through fines. Yet the Court deemed it dispositive that (i) the mayor's salary was not directly linked to individual fines and (ii) the mayor did not directly control the revenue generated by those fines. *See id.* at 64–65. And as explained above, this case is even easier, given a yearly reimbursement amount not tied to individual pipeline approvals, as well as a greater degree of separation between FERC and Congress.

Finally, Riverkeeper cites individual instances of alleged bias to support its view that the Commission has succumbed to temptation. Yet, Riverkeeper is not bringing a claim of actual bias in any particular case—and indeed could not have done so here. *See NO Gas Pipeline*, 756 F.3d at 769. And its individual allegations of actual bias have little if any bearing on whether the funding mechanism itself establishes an unconstitutional structural bias.

For these reasons, we reject Riverkeeper's due-process challenge to the Commission's funding mechanism.

2

Riverkeeper raises a separate due-process challenge to the Commission's use of tolling orders to satisfy its deadlines for

acting on rehearing applications. The Natural Gas Act provides that unless FERC "acts upon [an] application for rehearing within thirty days after it is filed, such application may be deemed to have been denied." 15 U.S.C. § 717r(a). According to Riverkeeper, FERC regularly fails to rule on the merits of rehearing applications within 30 days, issues tolling orders that extend their pendency indefinitely, and allows pipeline construction to proceed in the meantime, thereby preventing judicial review until it is too late.

We have long held that FERC's use of tolling orders is permissible under the Natural Gas Act, which requires only that the Commission "act upon" a rehearing request within 30 days, 15 U.S.C. § 717r(a), not that it finally dispose of it. *See Cal. Co. v. FPC*, 411 F.2d 720, 722 (D.C. Cir. 1969) (per curiam); *accord Kokajko v. FERC*, 837 F.2d 524, 526 (1st Cir. 1988); *Gen. Am. Oil Co. of Tex. v. FPC*, 409 F.2d 597, 599 (5th Cir. 1969). To prevail on its claim here, Riverkeeper would need to show that FERC's statutorily authorized practice of taking more than 30 days to finally dispose of a rehearing petition violates due process in each and every instance, no matter the reasons for taking more time, the complexity of the application, or the amount of development allowed or blocked in the interim. The Constitution imposes no such categorical rule, and Riverkeeper makes no serious effort to contend otherwise.

Instead, Riverkeeper attempts to distinguish cases upholding FERC's use of tolling orders by describing allegedly "egregious facts" of individual certification proceedings. Reply Br. 27. However, we do not have before us the constitutionality of any particular tolling order. Nor could we in this case, as any final agency action in a certification proceeding would be subject to review only on a petition for review filed in the first instance in the court of appeals. *See* 15 U.S.C. § 717r(b); *NO Gas Pipeline*, 756 F.3d at 768–70.

Accordingly, any claim of unreasonable or unconstitutional delay—or any other claim designed to preserve the integrity of future judicial review in individual certification proceedings— would lie in a mandamus action filed directly in the court of appeals. *See Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 75–79 (D.C. Cir. 1984). Riverkeeper could pursue such relief in an appropriate case, but it has not done so here.

## IV

Because Riverkeeper's due-process claims lack merit, we affirm the district court's judgment.

*So ordered.*