# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 21, 2014        Decided April 15, 2014

No. 12-5412

COMMON CAUSE, ON ITS OWN BEHALF AND BEHALF OF ITS
MEMBERS, ET AL.,
APPELLANTS

v.

JOSEPH R. BIDEN, JR., IN HIS OFFICIAL CAPACITY AS
PRESIDENT OF THE UNITED STATES SENATE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00775)

*Emmet J. Bondurant II* argued the cause for appellants.
With him on the briefs was *Stephen Spaulding*.

*Thomas E. Caballero*, Assistant Senate Legal Counsel,
Office of Senate Legal Counsel, argued the cause for appellees.
With him on the brief were *Morgan J. Frankel*, Senate Legal
Counsel, *Patricia Mack Bryan*, Deputy Senate Legal Counsel,
and *Grant R. Vinik*, Assistant Senate Legal Counsel.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and
RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*:  A bill that would have become the "DISCLOSE" Act and a bill that would have become the "DREAM" Act never became law. Both bills passed the House of Representatives during the 111th Congress and then stalled in the Senate. *See generally* H.R. 5281, 111th Cong. (2d Sess., 2010) (DREAM bill); H.R 5175, 111th Cong. (2d Sess., 2010) (DISCLOSE bill). The Senate never put either to a vote. Both fell to a filibuster. According to the plaintiffs, the Senate rule governing filibusters is unconstitutional.

The mechanics of a filibuster are these. Senators are entitled to debate any bill indefinitely unless the Senate passes a motion, known as a "cloture" motion, to end debate and proceed to a vote on the bill. *See* WALTER J. OLESZEK, CONG. RESEARCH SERV*.,* CLOTURE: ITS EFFECT ON SENATE PROCEEDINGS (2008). The Senate typically operates by majority rule. But under Senate Rule XXII, invoking cloture requires a three-fifths majority of all Senators—sixty votes. *See* STANDING RULES OF THE SENATE, S. DOC. 113-18, R. XXII § 2, at 15-17 (2013). In other words, even when a majority of Senators support a bill, a minority of Senators can put off a vote indefinitely.

Historically, a Senator determined to prevent a vote on a measure he opposed would stand and speak for hours on end. Unless he yielded the floor, the Senate could not move forward. Modern filibusters are less physically demanding. Due to a change in the Senate's legislative procedure, filibustering no longer requires that a Senator "actually stand before the chamber speaking." Tonja Jacobi & Jeff VanDam, *The Filibuster and Reconciliation: The Future of Majoritarian Lawmaking in the U.S. Senate*, 47 U.C. DAVIS L. REV. 261, 277-78 (2013). About forty years ago, the Senate began to conduct its legislative

business on parallel "tracks." *See* Josh Chafetz, *The Unconstitutionality of the Filibuster*, 43 CONN. L. REV. 1003, 1010 (2011). As a result, the defeat of a cloture motion allows the Senate to take up other business while the "filibuster" remains, in a technical sense, ongoing.[1] *Id.*

The DREAM and DISCLOSE bills foundered on this modern version of the filibuster. The Senate considered cloture motions on both bills. Although the motions garnered the votes of a majority of Senators, neither motion achieved the sixty votes necessary to cut off debate. *See* 156 CONG. REC. S10,665 (daily ed. Dec. 18, 2010) (defeating cloture, 41-55, on the House-passed DREAM bill); 156 CONG. REC. S7388 (daily ed. Sept. 23, 2010) (defeating cloture, 39-59, on the Senate version of the DISCLOSE bill after the House passed a similar bill). After the failed cloture votes, the Senate turned to other business.

The plaintiffs in this case are House members who voted for the DREAM and DISCLOSE bills, individuals who would have benefitted from the DREAM Act, and an association, Common Cause, that supported passage of the DISCLOSE Act. We shall refer to the plaintiffs collectively as Common Cause. They brought suit in the district court in May 2012 against the Vice President and three Senate officers. Their complaint alleged that the effect of Rule XXII is to require sixty votes to get legislation through the Senate, that the rule prevents the passage of legislation that has the support of a majority of both houses of Congress, and that the rule therefore violates the Constitutional principle of majority rule. They asked the court to strike the

---

[1] Making filibusters easier has made them more frequent. Today the mere threat of a filibuster may be "enough to convince the majority leader to devote the Senate's time to other matters." RICHARD S. BETH & VALERIE HEITSHUSEN, CONG. RESEARCH SERV., FILIBUSTERS AND CLOTURE IN THE SENATE 23 (2013).

sixty-vote requirement from Rule XXII and replace it with a majority-rule requirement.[2]

The district court dismissed the complaint for lack of jurisdiction. *Common Cause v. Biden*, 909 F. Supp. 2d 9, 17-27 (D.D.C. 2012). The court ruled that none of the plaintiffs—neither the Congressmen, the individuals, nor the association—had suffered a cognizable injury. *See id.* at 18-20 (procedural injury), 21-22 (substantive injury), 23-26 (vote nullification). It found that the plaintiffs could not satisfy the causation and redressability prongs of standing, because there was no guarantee the bills would have passed but for Rule XXII and because nothing the court could do would provide effective relief. *Id.* at 22-23. The court also determined that the suit presented a nonjusticiable political question. *Id.* at 27-31.

We agree with the district court that Common Cause lacks standing, but for a different reason. Our analysis focuses on whom Common Cause chose to sue—or, more to the point, *not* to sue.

The Senate has the power to "determine the Rules of its Proceedings." U.S. CONST. art. I, § 5. Accordingly, it was the Senate that adopted the cloture rule in 1917, *see* Catherine Fisk & Erwin Chemerinsky, *The Filibuster*, 49 STAN. L. REV. 181, 195 (1997); it was the Senate that amended the rule thereafter,

---

[2] This is not the first constitutional challenge to the filibuster. No court has reached the merits of the dispute. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Senate*, 432 F.3d 359 (D.C. Cir. 2005) (dismissing for lack of standing); *Patterson v. U.S. Senate*, No. 13-2311 (N.D. Cal. Mar. 31, 2014) (same); *Page v. Shelby*, 995 F. Supp. 23 (D.D.C. 1998) (same). But the filibuster remains a topic of scholarly debate. *See, e.g.*, Josh Chafetz & Michael J. Gerhardt, Debate, *Is the Filibuster Constitutional?*, 158 U. PA. L. REV. PENNUMBRA 245 (2010).

*see id.* at 209-13; and it was the Senate that failed to invoke cloture on the DREAM and DISCLOSE bills. If "we assume for purposes of standing that [Common Cause] will ultimately receive the relief sought," *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996) (en banc), it will be the Senate that has to conduct its legislative business according to a court-ordered change in its rule.

Yet the complaint named neither the Senate nor a Senator.[3] It is apparent why. *See* Tr. of Oral Arg. at 11, *Common Cause v. Biden*, No. 12-5412 (D.C. Cir. Jan. 21, 2014). The Constitution's Speech or Debate Clause provides that "for any Speech or Debate in either House," Senators and Representatives "shall not be questioned in any other Place." U.S. CONST. art I, § 6. The Clause confers immunity for any act that falls "within the sphere of legitimate legislative activity." *Eastland v. U.S. Servicemen's*

---

[3] Citing *Montana v. United States*, 440 U.S. 147 (1979), Common Cause argues that no matter who the defendants are, the Senate will be bound by the result of this lawsuit because it "has undertaken and is controlling the defense" on behalf of the Senate officers sued. Reply Br. of Appellants 1 n.2. We seriously doubt whether *Montana*—a case about collateral estoppel—supports Common Cause's position. But even if it did, the argument has at least two fatal flaws. First, it appears only in Common Cause's reply brief and is forfeit. *See Newspaper Ass'n of Am. v. Postal Regulatory Comm'n*, 734 F.3d 1208, 1212 (D.C. Cir. 2013) ("[W]e have repeatedly held that we do not consider arguments raised only in a reply brief."). Second, there is no reason to think Common Cause's *ipse dixit*—that the Senate is "controlling" the defense—is true. Senate Resolution 485, cited by Common Cause, simply authorizes Senate Counsel "to represent" the defendants in this lawsuit. S. Res. 485, 112th Cong. (2012). We doubt the Senate's involvement extended any further. Indeed we doubt Senate Counsel would have *allowed* it to. *Cf.* MODEL RULES OF PROF'L CONDUCT R. 1.8(f) (barring interference with the client-lawyer relationship by a third party who pays for the representation).

*Fund*, 421 U.S. 491, 503 (1975); *see also Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880) (the Clause covers all "things generally done in a session of the House [or Senate] by one of its members in relation to the business before it"). And it protects not only elected legislators but their aides, to whom legislative work is delegated. *See Gravel v. United States*, 408 U.S. 606, 616-18 (1972). That is, the Clause covers aides when their conduct "would be a protected legislative act if performed by the Member himself." *Id.* at 618.

When the Clause applies, it is an absolute bar to suit. *See Eastland*, 421 U.S. at 503. The right not to be "questioned in any other Place," U.S. CONST. art. I, § 6, means that lawmakers are protected "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967).

What defeated the DREAM and DISCLOSE bills was legislative action, activity typically considered at the heart of the Speech or Debate Clause. *See, e.g.*, *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973). Yet Common Cause, in objecting to the Senate rule dealing with how Senators "Debate" legislation, named as defendants only the Vice President, in his capacity as President of the Senate, *see* U.S. CONST. art. I, § 3; the Secretary of the Senate; the Parliamentarian of the Senate; and the Sergeant-at-Arms of the Senate. Relying on the Supreme Court's Speech or Debate Clause decisions, the defendants mount an argument that the Clause protects them from suit, just as it does Senators and their aides.[4] Whether they are right is

---

[4] For instance, the Constitution designates the Vice President "President of the Senate." U.S. CONST. art. I, § 3. As such, he has "no Vote, unless [the Senate] be equally divided." *Id.* When "the Vice President is fulfilling his duties under Article I to preside over the Senate and break ties," he might "be considered part of the legislative

unnecessary for us to decide. In suing only non-Senators, Common Cause is "Hoist with [its] own petar." WILLIAM SHAKESPEARE, HAMLET, PRINCE OF DENMARK act 3, sc. 4.

To invoke the jurisdiction of the federal courts, a plaintiff must allege (1) a concrete injury (2) caused by the defendant (3) that a favorable judicial decision will redress. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146-47 (2013). The causation element requires that a proper defendant be sued. *See* 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3531.5 (3d ed. 2013); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). That is, a plaintiff's claimed injury must have been caused by "acts of the defendant, not of some absent third party." *Fla. Audubon Society*, 94 F.3d at 663.

The defendants argue that the Senate, acting through its voting Members, caused the injuries alleged in the complaint. In response, Common Cause cites *Powell v. McCormack*, 395 U.S. 486 (1969), for the proposition that it may challenge the cloture rule by suing the Senate officers responsible for "implementing" it, even if it cannot sue the legislators who created it. Reply Br. of Appellants 15 (emphasis omitted). The analogy to *Powell* does not hold up. After the House of Representatives voted to

---

branch and fall within the ambit of the Speech or Debate Clause." Roy E. Brownell II, *Vice Presidential Secrecy: A Study in Comparative Constitutional Privilege and Historical Development*, 84 ST. JOHN'S L. REV. 423, 579 (2010) (footnote omitted); *see also* Memorandum from Robert G. Dixon Jr., Ass't Att'y Gen., Office of Legal Counsel, U.S. Dep't of Justice, Re: Amenability of the President, Vice President and Other Civil Officers to Federal Criminal Prosecution While in Office, at 36 (Sept. 24, 1973) ("With respect to his responsibility as tie breaker his immunity . . . should be analogized to that of Members of Congress under Article I, section 6 . . ..").

exclude Adam Clayton Powell, Powell sued the Speaker of the House, five Members of the House, the Clerk of the House, the Sergeant at Arms, and the House Doorkeeper for "refus[ing] to pay Powell his salary" and "threaten[ing] to deny Powell admission to the House chamber." *Powell*, 395 U.S. at 493. The Court concluded that Powell could sue the House officers "for their acts" in implementing the House resolution. *Id.* at 505. The causal connection between the named officers and the specific injuries alleged was obvious.

Here, Common Cause does not identify anything the defendants did (or refrained from doing) to cause its alleged injuries. The Senate established the cloture rule and the Senators voting against cloture doomed the DREAM and DISCLOSE bills. It is hard to imagine how any of the defendants bore responsibility for that outcome. Consider, for instance, the defendant Senate Parliamentarian. If he enforced or executed Senate rules, then perhaps he could be held to account if the rule were unconstitutional. *See Powell*, 395 U.S. at 503-06. But the Parliamentarian's role is "purely advisory." Chafetz, *supra*, at 1036. Rulings on Senate procedure are the purview of the Senate's presiding officer. *Id.* at 1036-37. And Senate Rule XX makes the rulings of the presiding officer appealable to the full chamber.[5] *See* STANDING RULES OF THE SENATE, *supra*, R. XX.

---

[5] That opportunity to appeal constituted the so-called "nuclear option" the Senate invoked to modify the cloture rule as applied to executive branch and lower federal court nominees. *See generally* Jeremy W. Peters, *In Landmark Vote, Senate Limits Use of the Filibuster*, N.Y. TIMES (Nov. 21, 2013). On November 21, 2013, the Senate considered, and defeated, a cloture motion on a nomination to a judgeship on this court. Senator Reid, the majority leader, then raised a point of order to the Chair, positing that a cloture vote for such nominations required only a majority. The Chair rejected the point of order under Rule XXII. Senator Reid then appealed the ruling to the full Senate, and, by a 52-48 vote, the Chair's ruling was

Thus the Vice President is an improper defendant, too, even though he may preside over Senate proceedings. In any event, the Vice President did not preside over the cloture votes on the DREAM and DISCLOSE bills.

In short, Common Cause's alleged injury was caused not by any of the defendants, but by an "absent third party"—the Senate itself. *Fla. Audubon Society*, 94 F.3d at 663. We therefore lack jurisdiction to decide the case.

The judgment of the district court is

*Affirmed.*

---

overturned. Thus was set new Senate precedent interpreting Rule XXII in the context of executive branch and lower federal court nominations. *See* 159 CONG. REC. S8417-18 (daily ed. Nov. 21, 2013).