# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 10, 2019     Decided October 18, 2019

No. 18-1081

INEOS USA LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

LEVERET PIPELINE COMPANY, LLC AND MID-AMERICA
PIPELINE COMPANY, LLC,
INTERVENORS

———

Consolidated with 18-1200

———

On Petitions for Review of Orders of
the Federal Energy Regulatory Commission

———

*Richard B. Phillips Jr.* argued the cause for petitioner. On the brief were *Victoria M. Lauterbach* and *Wendy B. Warren*. *Sidney Fowler* entered an appearance.

*Robert M. Kennedy Jr.*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondents. With him on the brief were *Michael F. Murray*, Deputy

Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, *James P. Danly*, General Counsel, Federal Energy Regulatory Commission, and *Robert H. Solomon*, Solicitor.

*Charles F. Caldwell* and *Elizabeth B. Kohlhausen* were on the brief for intervenors Leveret Pipeline Company, LLC, et al. in support of respondents.

Before: ROGERS and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* ROGERS.

PER CURIAM:  INEOS USA LLC ("INEOS"), a chemical producer, petitions for review of the decision of the Federal Energy Regulatory Commission to accept tariff filings without an investigation pursuant to Section 15(7) of the Interstate Commerce Act ("ICA"), 49 U.S.C. app. § 15(7) (1988). INEOS wishes to connect its fractionator to the South Eddy Lateral, a natural gas liquids pipeline.  Ownership of the South Eddy Lateral recently changed hands from Mid-America Pipeline Company, LLC ("Mid-America"), to Leveret Pipeline Company LLC ("Leveret"), both subsidiaries of Enterprise Products Partners L.P. ("Enterprise").  Mid-America and Leveret filed tariffs with the Commission reflecting the transfer of ownership.  INEOS protested the tariff filings and argued that the transfer was intended to deny INEOS' access to the South Eddy Lateral and, more generally, to unduly discriminate in favor of Enterprise affiliates at the expense of third-party shippers.  INEOS requested the Commission reject the filings or, alternatively, suspend them and investigate the ownership change.  The Commission denied INEOS' protest and accepted

the tariff filings without investigation. INEOS now seeks judicial review, and the Commission responds that the court lacks jurisdiction. Because INEOS failed to establish Article III standing, we dismiss the petitions for lack of jurisdiction.

**I.**

In March 2017, INEOS sent Mid-America a written request to connect its fractionator to the South Eddy Lateral, which Mid-America then owned. While the connection request was pending, Leveret gained ownership of the South Eddy Lateral, and Mid-America and Leveret filed with the Commission cancellation and adoption tariffs, respectively.

INEOS protested the tariff filings, arguing that the transfer of ownership was intended to thwart its pending connection request. INEOS requested the Commission summarily reject the filings or suspend them for the maximum statutory seven-month period and hold a hearing. Leveret and Mid-America filed a joint answer to the protest, arguing that INEOS lacked standing as to abandonment of one route and the Commission lacked jurisdiction of the transfer of ownership. Leveret and Mid-America also denied that the transfer was intended to limit access to the South Eddy Lateral and stated that Leveret was still considering INEOS' connection request.

At the time of the tariff filings and protest, the Commission lacked a quorum and had delegated authority to Commission staff. Pursuant to this authority, Commission staff accepted Leveret and Mid-America's proposed tariffs for filing, subject to refund and further Commission order. *Leveret Pipeline Co. LLC, Order Accepting and Suspending Filings, Subject to Refund, and Further Commission Order* ("*Staff Order*"), 160 FERC ¶ 62,020, at P 5 (2017). INEOS petitioned for rehearing. Having regained its quorum, the Commission then denied

INEOS' rehearing request and accepted Leveret and Mid-America's tariff filings, to become effective on their proposed effective dates. *Leveret Pipeline Co. LLC, Order on Tariff Filings and Denying Rehearing* ("*Commission Order I*"), 162 FERC ¶ 61,038, at PP 4-5 (2018). The Commission stated that it lacked jurisdiction of pipeline service abandonments and therefore could not grant INEOS' request to suspend the cancellation tariffs. *Id.* at P 14 (citing *ARCO Pipe Line Co.*, 55 FERC ¶ 61,420 (1991)); *see also Farmers Union Cent. Exch. v. FERC*, 734 F.2d 1486, 1509 n.51 (D.C. Cir. 1984). It also stated that the adoption tariffs involved purely administrative exercises, because Leveret would offer the same transportation service at the same rates as Mid-America previously offered. *Commission Order I* at P 15. Therefore, the Commission declined to suspend the tariffs and order a hearing. *Id.* at P 17.

INEOS again petitioned for rehearing. The Commission denied the petition, which it found procedurally improper as a successive petition. *Leveret Pipeline Co. LLC, Order Denying Rehearing* ("*Commission Order II*"), 163 FERC ¶ 61,180, at PP 13-15 (2018). The Commission also stated that even if the petition were procedurally proper, there was no reason to suspend the tariffs and order a hearing, because the Commission had found "no evidence that Mid-America and Leveret's actions were unduly beneficial to affiliates." *Id.* at PP 23, 30.

INEOS petitioned this court for review of the Staff Order, Commission Order I, and Commission Order II, and the Commission filed a motion to dismiss on the ground that the court lacks jurisdiction. A special panel of the court referred the motion to a merits panel. *Per Curiam* Order, *INEOS USA LLC v. FERC*, Nos. 18-1081, 18-1200 (D.C. Cir. Nov. 14, 2018).

5

**II.**

In petitioning for review, INEOS chiefly contends that the court has jurisdiction to review the Commission's determination that it lacked jurisdiction of Mid-America's abandonment of service. The Commission responds that the court lacks jurisdiction to address INEOS' petitions for three reasons: its acceptance of the protested tariff filings without an investigation is not subject to judicial review; INEOS lacks standing to challenge the acceptance of the filings; and INEOS' petitions are untimely.

Federal courts are courts of limited jurisdiction and "possess only the power authorized by the Constitution and by statute." *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). As the party seeking review, INEOS bears the burden of establishing it has Article III standing. *See NO Gas Pipeline v. FERC*, 756 F.3d 764, 767 (D.C. Cir. 2014). The "irreducible constitutional minimum" of standing requires INEOS to show that it has suffered an injury in fact, caused by the Commission's challenged decision, which a favorable decision of the court is likely to redress. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury must be concrete and particularized, and actual or imminent, as opposed to merely conjectural or hypothetical. *Id*. at 560. "[W]hen the plaintiff is not . . . the object of the government action or inaction [the plaintiff] challenges," as is true here, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* at 562.

On the record before the court, it appears INEOS has not established Article III standing. *See Kansas Corp. Comm'n v. FERC*, 881 F.3d 924, 929–31 (D.C. Cir. 2018). Although the court must assume the truth of INEOS' factual allegations

regarding standing, *see City of Boston Delegation v. FERC*, 897 F.3d 241, 250 (D.C. Cir. 2018), "allegations that are really predictions" may be rejected as overly speculative, *see Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015). Even affording a generous interpretation to its allegations, INEOS fails to show that it has suffered an injury in fact that is fairly traceable to the challenged Commission decision. *See Kansas Corp. Comm'n*, 881 F.3d at 929–31.

INEOS' claim of competitive injury from denial of access to the South Eddy Lateral is too speculative to support standing. As INEOS acknowledges, Leveret has not yet accepted or denied its connection request. Therefore, INEOS' allegation of injury from denial of access is a mere "prediction[]" that Leveret ultimately will deny its pending request. *See Arpaio*, 797 F.3d at 21.

INEOS also alleges that it has suffered "delay" in access to the South Eddy Lateral as a result of the transfer of ownership from Mid-America to Leveret. Pet'r's Reply Br. 4–5. But INEOS failed to make this argument in its Opening Brief, and arguments made for the first time in a Reply Brief are generally forfeited. *See, e.g.*, *United States v. Wilson*, 605 F.3d 985, 1035 (D.C. Cir. 2010). Even if this allegation were properly before the court, INEOS has not established that it would have received access to the South Eddy Lateral more quickly absent the transfer of ownership. Leveret stated it is investigating operational and engineering issues related to the connection request, and INEOS did not rebut this with evidence or argument.

For similar reasons, INEOS also fails to demonstrate that the harm it has allegedly suffered is fairly traceable to the Commission's acceptance of the protested tariff filings. It is undisputed that the Commission lacks authority over INEOS'

request to connect its fractionator to Leveret's pipeline, and INEOS has stated that its petition for review challenges solely "the cancellation of Mid-America's service from South Eddy and Leveret's adoption of that service." Pet'r's Reply Br. 13. Therefore, to establish causation, INEOS must demonstrate that the transfer of ownership caused harm it has suffered from not yet receiving a connection to the pipeline. INEOS' claim that the transfer "aided" Leveret's denial of access to the South Eddy Lateral, Pet'r's Br. 20, lacks record support and is thus speculative. In sum, INEOS has not established that its claimed injury was caused by "acts of the [respondent], not of some absent third party," such as Enterprise or its affiliates. *See Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014).

Finally, INEOS contends that the Commission's determination that it lacked jurisdiction of certain protested tariff filings "denied INEOS the opportunity to challenge Mid-America's disposition of the South Eddy Lateral as an exercise of undue discrimination and affiliate abuse." Pet'r's Br. 20. Yet the ICA requires both Leveret and Mid-America to grant reasonable requests to provide service, and INEOS is free to file a Section 13(1) complaint challenging either company's conduct as unreasonable. *See* ICA §§ 1(4), 13(1). Moreover, the Commission found in the alternative that "no evidence" supported INEOS' claim of undue discrimination in favor of Enterprise affiliates. *Commission Order II* at P 23. This finding is unrebutted in the record before the court.

Because INEOS has not established Article III standing to challenge the Commission's decision to accept Mid-America and Leveret's tariff filings without an investigation, its petitions must be dismissed for lack of jurisdiction.

ROGERS, *Circuit Judge*, concurring: Any concern that a dismissal for lack of Article III standing appears harsh in view of INEOS' efforts to gain access to the South Eddy Lateral pipeline for over thirty months is eliminated here because Section 15(7) of the Interstate Commerce Act ("ICA") precludes judicial review of the decision INEOS seeks to challenge. During oral argument, counsel for INEOS suggested that INEOS' success in gaining access rested on its obtaining "more information" about the transfer of ownership, which it could obtain only through an investigation by the Commission of its claim of undue discrimination against non-affiliate shippers. Oral Arg. Tape at 13:19–13:22 (Sept. 10, 2019). To the extent INEOS might have established standing with such evidence, this court's inability to review the Commission's decision not to investigate the tariff filings protested by INEOS fully responds to INEOS' petitions.

Under *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), and its progeny, courts may address the issues of Article III standing and judicial reviewability in either order. Although courts may not assume "hypothetical jurisdiction" to proceed to the merits of a case, *id.* at 94, courts may address non-Article III "threshold questions," including rules "designed not merely to defeat the asserted claims, but to preclude judicial inquiry," before addressing Article III jurisdiction, *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005). This court has consistently accepted this understanding of *Steel Co. See, e.g.*, *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 513 (D.C. Cir. 2018); *Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348–49 (D.C. Cir. 2007); *United States ex rel. Long v. SCS Bus. & Tech. Inst., Inc.*, 173 F.3d 890, 893 (D.C. Cir. 1999). Because the question whether an agency decision is subject to judicial review is a paradigmatic threshold question, the court is not required to ensure it has Article III jurisdiction before addressing it.

2

In *Southern Railway Co. v. Seaboard Allied Mining Corp.*, 442 U.S. 444, 447–48 (1979), the Supreme Court held that the Interstate Commerce Commission's decision not to investigate a rate increase under ICA Section 15(8)(a) is not reviewable. The Court explained that a decision declining to investigate is a discretionary decision not to investigate at this time, rather than a final decision that a tariff is lawful. *Id.* at 452. Section 15(8) is derivative of Section 15(7), and this court applied *Southern Railway* to Section 15(7) in *Resolute Natural Resources Co. v. FERC*, 596 F.3d 840 (D.C. Cir. 2010). In *Resolute*, 596 F.3d at 841, this court held that the ICA precludes judicial review of decisions by the Commission declining to investigate allegedly anticompetitive conduct under Section 15(7). In other words, Congress granted the Commission unreviewable authority to determine whether to initiate a Section 15 investigation and whether to suspend challenged tariffs. *Arctic Slope Reg'l Corp. v. FERC*, 832 F.2d 158, 164–65 (D.C. Cir. 1987).

Although Section 15(7) does not permit judicial review, the ICA does provide for a judicial remedy through the Section 13(1) complaint procedure. As the Supreme Court explained in *Southern Railway*, 442 U.S. at 454, a shipper may require the Commission at any time to investigate the lawfulness of a rate – and may secure judicial review of any decision not to do so – by filing a Section 13(1) complaint. *See also Frontier Pipeline Co. v. FERC*, 452 F.3d 774, 776 (D.C. Cir. 2006); *Exxon Pipeline Co. v. United States*, 725 F.2d 1467, 1478 n. 7 (D.C. Cir. 1984) (Wright, J., concurring). INEOS remains free to file such a complaint, alleging that Leveret has unreasonably denied its access to the South Eddy Lateral. That could result in both a final decision on the lawfulness of the challenged tariffs and judicial review of that decision. Indeed, counsel for INEOS acknowledged during oral argument that INEOS had

never disputed that the Section 13(1) complaint process was available. Oral Arg. Tape at 16:22–16:46.

Nonetheless, INEOS maintains that the court has jurisdiction of its petitions because the Commission's statement that it lacked jurisdiction of Mid-America's partial abandonment of service is erroneous as a matter of law. The exception that INEOS invokes is foreclosed by this court's precedent. In *Resolute*, 596 F.3d at 841–42, the court held that the Commission's decision to reject a protest was not reviewable, even though the Commission had declined to investigate in part because it concluded that the allegations of anticompetitive conduct were beyond the Commission's jurisdiction.

Similarly, to the extent INEOS maintains that the court has jurisdiction to review whether the Commission's acceptance of the tariff filings, as distinct from its decision not to order a hearing, was arbitrary and capricious, this is at odds with this court's precedent. The decision to accept a rate filing is part of the decision not to investigate or to suspend a tariff. "It would make little sense to declare orders concerning suspension and investigation unreviewable if the courts may review the related order to accept a rate filing." *Papago Tribal Util. Auth. v. FERC*, 628 F.2d 235, 243 (D.C. Cir. 1980); *see also Aberdeen & Rockfish R.R. Co. v. United States*, 664 F.2d 41, 43 (5th Cir. 1981).

The cases on which INEOS relies are not to the contrary, because they involved a final decision of the Commission or another administrative body. Here, by contrast, the Commission exercised its discretion not to investigate the challenged tariffs and therefore has not yet made a final decision as to their lawfulness. For the proposition that "certain aspects of ICA section 15(7) are subject to judicial

review," Pet'r's Br. 26, INEOS cites *Ass'n of Oil Pipe Lines v. FERC*, 83 F.3d 1424, 1444 (D.C. Cir. 1996). In that case, however, the court discussed the availability of judicial review once the Commission's investigation under Section 15(7) had resulted in a final decision. *See also S. Ry. Co.*, 442 U.S. at 452. Similarly, other cases INEOS cites to suggest that the court may review the Commission's determination that it lacked jurisdiction of Mid-America's abandonment of service involved review of final decisions. *See* Pet'r's Br. 27; *Shell Oil Co. v. FERC*, 47 F.3d 1186, 1200 (D.C. Cir. 1995); *Int'l Bhd. of Elec. Workers v. ICC*, 862 F.2d 330, 332 (D.C. Cir. 1988); *Office of Consumers' Counsel v. FERC*, 655 F.2d 1132, 1141–42 (D.C. Cir. 1980). In the one exception, *Earth Resources Co. of Alaska v. FERC*, 628 F.2d 234, 235 (D.C. Cir. 1980), the court held it lacked jurisdiction because there was no reviewable final order.

It is true that in *Resolute*, 596 F.3d at 842, the court identified two possible circumstances in which judicial review of a Commission decision under Section 15 may be available, but neither potential exception applies here. First, INEOS has not shown that the Commission overstepped the bounds of its statutory authority in accepting the tariff filings without investigation. *See id.* Second, the Commission's reasons for rejecting the protests here provide no basis for reviewability, as the Commission is not required under Section 15(7) to explain its discretionary decision to accept a tariff filing without investigation. *See id*.

There is yet another reason why the *Southern Railway* rule permits few, if any, exceptions. In *Heckler v. Chaney*, 470 U.S. 821, 833 n.4 (1985), the Supreme Court left open the possibility that where an agency action is committed to agency discretion by law, and the agency declines "to institute proceedings based solely on the belief that it lacks

jurisdiction," that decision may be subject to judicial review. This court recognized such an exception in *International Longshoremen's Ass'n v. National Mediation Board*, 785 F.2d 1098, 1100–01 (D.C. Cir. 1986). *See also Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 753 n.1 (D.C. Cir. 1997). But this exception is limited to agency actions committed to agency discretion by law, which are merely "presumptively unreviewable." *Heckler v. Chaney*, 470 U.S. at 832. By contrast, "Congress intended to preclude judicial review" of decisions not to investigate under Section 15 of the ICA. *Id.* at 828–29 (citing *S. Ry. Co.*, 442 U.S. 444).

Accordingly, INEOS' petitions must be dismissed for lack of jurisdiction.